**UNITED STATES of America, Appellee,**

v.

**Joseph CANDITO, Appellant.**

**No. 295, Docket 89–1230.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1989.

Decided Dec. 14, 1989.

Joseph B. Burns, Hartford, Conn. (Austin J. McGuigan, Hoberman & Pollack, P.C., of counsel), for appellant.

Denis M. King, Asst. U.S. Atty. (Stanley A. Twardy, Jr., U.S. Atty. D. Conn., of counsel), for appellee.

Before OAKES, Chief Judge, KEARSE and ALTIMARI, Circuit Judges.

OAKES, Chief Judge:

Joseph Candito was convicted by a jury in the United States District Court for the District of Connecticut on January 26, 1989, for conspiracy to distribute and to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846 (1982), and for possession with intent to distribute and distribution of cocaine within one thousand feet of a public elementary school, 21 U.S.C. §§ 841(a)(1), 845a(a) (1982 & Supp. V 1987), and 18 U.S.C. § 2 (1982). He was sentenced by Judge Warren W. Eginton to 168 months imprisonment pursuant to the Sentencing Guidelines. *See generally* United States Sentencing Commission, *Guidelines Manual* (Oct. 1987) (hereinafter "Guideline" or "Guidelines").

Candito raises two claims on appeal. First, he challenges the district court's calculation of the Guideline range applicable to his conduct. In brief, the district court found that Candito was involved in a cocaine distribution conspiracy during a period in which the conspiracy made or attempted to make four separate cocaine sales, with those transactions either known to Candito or reasonably foreseeable from the conspiracy. The district court thus calculated the Guideline range for Candito's sentence based upon the amounts of cocaine involved in those four transactions. Candito contends that the district court should have taken account of only one of the transactions in sentencing him. Second, Candito argues that the district court violated the Due Process Clause by making its findings regarding Candito's involvement in the conspiracy during the four separate transactions by the preponderance of the evidence standard instead of the beyond reasonable doubt standard.

We affirm.

## FACTS

The charges against Candito stemmed from what the Government alleged was a cocaine distribution conspiracy stretching from October 1987 until September 1988 and involving five players: Candito, Richard Terico, Theodore Farfaglia, John DeFelice, and Thomas Pierro.

The first event in this conspiracy transpired on October 2, 1987, when two undercover agents, Officer William Chase of the Connecticut Statewide Narcotics Task Force and Special Agent Grayling Williams of the Drug Enforcement Administration, arranged to purchase 125 grams of cocaine from Terico. That evening, Farfaglia delivered 113.88 grams to the agents, instead of the 125 grams upon which the agents and Terico had agreed earlier that day.

Several months later, on December 16, 1987, Officer Chase and Special Agent Williams met with Terico, DeFelice, and Candito at the Howard Johnson's Motor Lodge in Stamford, Connecticut. DeFelice told the agents that the October 2, 1987, transaction was not the first instance in which Farfaglia had skimmed cocaine. Consequently, DeFelice stated, Farfaglia no longer would be working for Terico, and, instead, DeFelice and Candito would take his place. The discussion that ensued at the Howard Johnson's indicated that Candito was well aware of Farfaglia's prior dealings and his propensity to short-change customers.

CANDITO: He [Farfaglia] shorts you maybe like five grams—

CHASE: Exactly.

CANDITO: Three grams, five, eight.

CHASE: Exactly what—exactly what happened.

CANDITO: Do you know what I'm sayin'? So when he works on the street he picks up five from you, three from this guy, by, by—

CHASE: [Unintelligible]

CANDITO: Fifteen hundred for doin' nothin'. He gets paid [unintelligible] so.

DeFelice also indicated that he and Candito had been involved in similar narcotics dealings in cooperation with Terico. He assured Williams, "We'll—you know, we'll conduct business the right way. I know—I know it wasn't done the right way." He then added, "[Terico] should have introduced us before...."

While at the Howard Johnson's on December 16, 1987, the agents arranged to buy 125 grams of cocaine from DeFelice. On December 22, 1987, Officer Chase, Special Agent Williams, DeFelice, and Candito met at the Nineteenth Hole Restaurant in Stamford, Connecticut, to consummate the transaction. Pursuant to DeFelice's suggestion, the four completed the deal in a parking lot across the street from the restaurant. The parking lot was within one thousand feet of the Westover Elementary School.

The next month, on January 20, 1988, the agents met with Candito and DeFelice at the Nineteenth Hole Restaurant in Stamford. At this time, DeFelice told the agents that he and Candito desired both to make amends for Farfaglia's failure to deliver the full amount of agreed-upon cocaine during the October 2, 1987, transaction and to forge a more comfortable future relationship with them:

DeFELICE: Alright, here's one deal okay? I told you before, whether [Terico] or me and Joe you're dealin' with, you were short seven grams, I got seven grams for you. I'll give you the seven grams. You do what you want. If you want anything else, its [sic] up to you. 'Cause I gave you my word last time, you will get the seven grams. Now me and Joe are responsible. Me and Joe are eatin' that.

WILLIAMS: I hear you.

DeFELICE: Okay? 'Cause I wanna do business the right way. I want you to feel comfortable with me when you're with me.

On March 25, 1988, the agents met Candito and DeFelice at a party in Darien, Connecticut. At the party, Candito furnished the agents a beeper number at which the agents could reach either him or DeFelice.

Several months later, on July 14, 1988, Officer Chase and Special Agent Williams purchased 154.2 grams of cocaine at a rest area on Interstate Route 95 in Darien. In delivering the cocaine, DeFelice was accompanied by the final defendant, Pierro, but not by Candito. Special Agent Williams inquired as to Candito's role in the distribution scheme. DeFelice stated that Candito continued to be involved in the distribution ring:

WILLIAMS: You gonna be with Tommy [Pierro] now?

DEFELICE: He's with me.

WILLIAMS: And Jo Jo [Candito]?

DEFELICE: And Jo Jo.

The final transaction occurred during early September 1988. On September 1, 1988, Special Agent Williams negotiated by telephone with DeFelice for a purchase of three kilograms of cocaine. Candito apparently was present with DeFelice at the time. On one occasion, DeFelice could be heard commenting to Candito that Special Agent Williams had been unable to make contact through a phone number provided by DeFelice. Additionally, when discussing with Special Agent Williams the timing of the proposed sale, DeFelice was talking at the same time with Candito regarding their plans to travel to Florida on an upcoming weekend.

WILLIAMS: You know, but you're not sure whether you're gonna be ba—around next week?

(Sound of Williams' beeper in background)

DEFELICE: Your beeper's off again. Ah, I don't know, Joe, when we goin' Joe, we're gonna leave on the weekend mainly, right? That's what we got it planned for the weekend we're (stutter) tyin' every—we're—we're—we're closin' everything up and we're tryin' to get away for the weekend.

WILLIAMS: Uh huh. And you don't know when you're comin' back next week?

DEFELICE: And how long—how—he wants to know how long we're gonna

be gone for Joe. I told him, it could be a matter of a couple days. It could be a week. It could be two weeks, three weeks, maybe a month. Its [sic] funny, I mean, when we get down there.

On the morning of September 7, 1988, DeFelice and Special Agent Williams arranged to meet at a McDonald's restaurant on Interstate Route 95 in Darien a little after noon that same day. DeFelice said that he could deliver one kilogram in the afternoon and the other two kilograms later that evening. DeFelice told Special Agent Williams that he would be accompanied by Candito at the afternoon purchase. Candito did not appear that afternoon, and DeFelice complained, "[Expletive] Joe's supposed to be around. He ain't around." After DeFelice turned over the kilogram, he was arrested.

Candito was arrested the same day. At the time of his arrest, he was carrying $2,720 in cash, slips of paper bearing various beeper numbers (including that of Special Agent Williams), the business card of a representative of a paging service, the business card of a person who had rented an apartment to DeFelice, and a slip of paper apparently listing amounts owed by particular persons to DeFelice and Candito.

The district court calculated Candito's Guideline sentence as follows: It categorized Candito's offense under Guideline § 2D1.1(a)(3), which covers narcotics trafficking. Pursuant to § 2D1.1(a)(3), it then calculated the quantity of narcotics involved in Candito's conduct. The district court concluded that Candito both belonged to the conspiracy between October 2, 1987, and September 7, 1988, and could be held responsible for the four transactions occurring during that time. The October 2, 1987, transaction amounted to 113.88 grams. Although the December 22, 1987, transaction involved 124 grams, this amount was doubled to 248 grams pursuant to Guideline § 2D1.3(a)(2)(B) (Supp. Jan. 15, 1988), because the transaction occurred within one thousand feet of a schoolyard.[1] The July 14, 1988, transaction

---

**1.** This provision concerning calculation of of-    fense level for a person involved in a drug

added another 154.2 grams to the total. Finally, the negotiated amount of the September 7, 1988, transaction was three kilograms, bringing the total quantity to over 3.5 kilograms and a corresponding offense level of 30.

Next, under Guideline § 4A1.1 the district court calculated Candito's criminal history, which amounted to 31 criminal history points. Under Guideline Ch. 5, Part A, Candito's 31 criminal history points placed him into criminal history category VI, which, combined with his offense level of 30, resulted in a sentencing range of 168 to 210 months. The district court sentenced him to 168 months.

## DISCUSSION

A. *District Court's Finding of Candito's Involvement in the Cocaine Conspiracy from October 2, 1987, to September 7, 1988:* Application Note 1 to Guideline § 2D1.4 instructs:

> If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale.... If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.[2]

As noted above, in calculating the appropriate Guideline range, the district court found, first, that Candito belonged to the cocaine conspiracy during the transactions that took place on October 2, 1987, December 22, 1987, July 14, 1988, and September 7, 1988; second, that the sales were either made by Candito or by his co-conspirators, with such acts by his co-conspirators known to Candito or reasonably foreseeable; and, third, that the amount transacted

during Candito's involvement in the conspiracy exceeded 3.5 kilograms. Candito accepts that his involvement in the conspiracy encompassed the December 22, 1987, transaction, but not the others.

■ The parties have devoted substantial time briefing whether we are governed by the "clearly erroneous" standard attaching to review of findings of fact or by the "due deference" standard that applies to review of the district court's application of law to facts. *See* 18 U.S.C.A. § 3742(e) (West Supp.1989). Regardless of which standard applies, however, we find that the district court was justified in calculating Candito's sentence based upon all four transactions. We address the three disputed transactions in turn:

1. *The October 2, 1987, Transaction:* The district court's conclusions that Candito belonged to the conspiracy when Farfaglia made the October 2, 1987, sale of 113.88 grams and was aware of the transaction are supported by the evidence. Both DeFelice's and Candito's conduct during the December 16, 1987, Howard Johnson's meeting evidence that they certainly knew of the transaction. Additionally, DeFelice's offer to the Government agents on January 20, 1988, that he and Candito would make up for the amount of cocaine Farfaglia had skimmed from the promised 125 grams indicates that the two bore responsibility for Farfaglia's actions. Most telling, however, is DeFelice's musing during the December 16 meeting that, in light of Farfaglia's propensity for skimming, Terico should have introduced the agents to DeFelice and Candito earlier, as the two would have been more suitable suppliers for the agents. This statement offers sufficient proof that DeFelice and Candito also were selling cocaine for Terico at the time of the October 2 transaction and thus were part of the conspiracy. Although it was DeFelice, and not Candito, who made this statement, given Candito's presence when the statement was made and the evidence

---

transaction within 1,000 feet of a schoolyard has been amended under the revised Guidelines. *See* United States Sentencing Commission, *Guidelines Manual* § 2D1.2 (Nov. 1989).

**2.** This application note also has been amended by the revised Guidelines. *See* Guidelines § 2D1.4, Application Note 1 & § 1B1.3, Application Note 1 (Nov. 1989).

elicited at trial that DeFelice and Candito worked in tandem, DeFelice's statement was imputable to Candito.

2. *The July 14, 1988, Transaction:* Although Candito alleges that his involvement ceased after the December 22, 1987, transaction, the evidence suggests otherwise. As noted above, on January 20, 1988, Candito was present when DeFelice promised to the Government agents that he and Candito would make amends for the cocaine Farfaglia had skimmed during the October 2, 1987, transaction. Similarly, several months later, on March 25, 1988, Candito furnished the agents a beeper number at which he and DeFelice could be reached. Candito apparently was present during the September 1, 1988, negotiations for the three kilograms. Finally, when arrested on September 7, 1988, Candito had in his possession Special Agent Williams' beeper number, the business card of a representative of a paging service, the business card of someone who had rented an apartment to DeFelice, and the slip of paper which acted as an abbreviated accounts receivable ledger. Given Candito's suspicious, unexplained behavior continuing until the time of his arrest, and the absence of any evidence showing that he had withdrawn from the conspiracy, his argument that his involvement in the conspiracy ceased as of December 22, 1987, is far-fetched. Similarly, any argument that the July 14, 1988, transaction was not reasonably foreseeable from the conspiracy lacks merit.

3. *The September 7, 1988, Transaction:* For the same reasons, we reject the arguments that Candito was no longer a member of the conspiracy as of September 7, 1988, and that the transaction transpiring on that date was not reasonably foreseeable.

■ Candito presents one last argument as pertains to the district court's consideration of the September 7, 1988, transaction in calculating his sentence. He contends that the district court should have considered only the one kilogram DeFelice actually delivered to Special Agent Williams,

but not the additional two kilograms DeFelice, before being arrested, had promised to deliver later that evening. Guideline § 2D1.4(a), Application Note 1, provides:

... the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. Where the defendant was not reasonably capable of producing the negotiated amount the court may depart and impose a sentence lower than the sentence that would otherwise result.[3]

Candito contends that DeFelice was not reasonably capable of producing the final two kilograms. However, there was no evidence that this was so. During the discussion between DeFelice and Special Agent Williams the morning of September 7, 1988, DeFelice did not intimate that he could not procure three kilograms of cocaine. Instead, he only questioned whether he could provide the cocaine at the time Special Agent Williams had requested and eventually agreed he could complete the transaction later that evening. Consequently, this argument fails.

B. *Candito's Due Process Claim:* Candito's other claim asserts that the district court violated due process by basing its findings pertaining to his participation in the conspiracy on the preponderance of the evidence standard rather than the beyond reasonable doubt standard. Candito hangs his hat on a decision from the Central District of California holding that due process requires proof beyond reasonable doubt of the facts supporting the computation of a Guidelines sentence. *See United States v. Davis,* 715 F.Supp. 1473 (C.D.Cal.1989). We are not persuaded by the reasoning of *Davis,* nor, apparently, is the Ninth Circuit. *See United States v. Restrepo,* 883 F.2d 781, 784 n. 7 (9th Cir.1989). More importantly, however, this argument is foreclosed by a contrary decision of this court, *United States v. Guerra,* 888 F.2d 247 (2d Cir.1989), which held that proof of relevant conduct under the Guidelines by a preponderance of the evidence satisfies due pro-

---

3. *See supra* note 2.

cess. Consequently, Candito's second argument fails.

Judgment affirmed.