**UNITED STATES of America, Appellee,**

v.

**Rafael PIMENTEL, Amabledeyes DeJesus, Julio DeJesus, Juan DeJesus, Defendants,**

**Amabledeyes DeJesus, Julio DeJesus, Juan DeJesus, Defendants–Appellants.**

**Nos. 1262, 1263 and 1026, Dockets 90–1537 to 90–1539.**

United States Court of Appeals, Second Circuit.

Argued March 28, 1991.

Decided May 2, 1991.

Alan Drezin, Brooklyn, N.Y., for defendant-appellant Amabledeyes DeJesus.

Mark B. Gombiner, New York City (Henriette D. Hoffman, The Legal Aid Soc., Federal Defender Services Unit, of counsel), for defendant-appellant Julio DeJesus.

Howard L. Jacobs, New York City, for defendant-appellant Juan DeJesus.

Kevin P. McGrath, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., for the E.D. of N.Y., Matthew E. Fishbein, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, Chief Judge, KEARSE and McLAUGHLIN, Circuit Judges.

OAKES, Chief Judge:

The DeJesus brothers, Julio, Amabledeyes and Juan, appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York, Thomas C. Platt, Chief Judge. Julio DeJesus pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. § 846. After a jury trial, Amabledeyes and Juan DeJesus were also convicted of a section 846 conspiracy. In addition, both defendants were found guilty of possession with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. § 841, and Juan DeJesus was found guilty of a third count of using and possessing a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924.[1]

The sentencing took place on August 30, 1990. Julio DeJesus was sentenced to 72 months' imprisonment, five years' supervised release, and a $50 special assessment. Amabledeyes DeJesus was sentenced to 84 months' imprisonment on each of his two

---

1. A fourth defendant, Rafael Pimentel, pleaded guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841, and was sentenced to 87 months' imprisonment, five years' supervised release, and a $50 special assessment. He has not appealed.

convictions, to be served concurrently. He was also sentenced to five years' supervised release and a $100 special assessment. Juan DeJesus was sentenced to 157 months' imprisonment—two concurrent terms of 97 months on the drug counts and a mandatory consecutive term of 60 months on the gun count—as well as five years' supervised release and a $150 special assessment.

## I

The principal claims on this appeal relate to the district court's finding regarding the amount of cocaine involved in the offense, upon which the court relied in calculating appellants' base offense levels under the federal Sentencing Guidelines. *See* United States Sentencing Commission, Guidelines Manual (Nov. 1989) (the "Guidelines" or "U.S.S.G.").[2] Where a defendant is convicted of participation in a narcotics conspiracy, "the offense level shall be the same as if the object of the conspiracy ... had been completed." U.S.S.G. § 2D1.4. Accordingly, if the crime involves negotiation to traffic in a controlled substance, "the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount" involved in the conspiracy, unless the defendant "did not intend to produce and was not reasonably capable of producing the negotiated amount." U.S.S.G. § 2D1.4 application note 1; *see also United States v. Moon,* 926 F.2d 204, 208–09 (2d Cir.1991); *United States v. Candito,* 892 F.2d 182, 185–86 (2d Cir.1989). Here, the district court found that appellants negotiated to supply undercover New York City Police Detective Bruce Rivera with two kilograms of cocaine, and that they were prepared to supply such an amount. Accordingly, in sentencing the DeJesus brothers, the court applied a base offense level of 28, pursuant to U.S.S.G. § 2D1.1(a)(3) and subsection 8 of the Drug Quantity Table, U.S.S.G. § 2D1.1(c). Amabledeyes and Juan DeJesus now argue that there was insufficient

evidence to show that they or their coconspirators negotiated for, or were capable of producing, more than the single kilogram that they actually delivered immediately prior to their arrest. In addition, Julio DeJesus, who pleaded guilty, contends that the court denied him due process by relying on evidence adduced at his brothers' trial in attributing the two kilograms to him. Assuming that these arguments were preserved for appeal, we find them to be without merit.

 In challenging the sentencing court's factual finding, appellants face a heavy burden. Disputed facts supporting sentencing calculations under the Guidelines need only be proven by a preponderance of the evidence, *see United States v. Macklin,* 927 F.2d 1272, 1280 (2d Cir.1991); *United States v. Guerra,* 888 F.2d 247, 251 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990), and the sentencing court's findings may not be disturbed on appeal unless clearly erroneous, *see* 18 U.S.C. § 3742(e); *United States v. Lanese,* 890 F.2d 1284, 1291 (2d Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). Here, the court's finding that appellants negotiated a two-kilogram deal was amply supported by the evidence established at trial and summarized in the Presentence Reports ("PSR"s). Detective Rivera testified that on October 16, 1989, he met with Rafael Pimentel and agreed to purchase two kilograms of cocaine. Pimentel then escorted Detective Rivera to the Reyes Grocery, where, in the presence of brothers Juan and Julio, Amabledeyes DeJesus confirmed in a loud voice that once they received payment, they would send for the cocaine— two kilograms' worth. Detective Rivera eventually called the deal off, but he directed an informant to return to the grocery store to continue negotiations. On October 17, 1989, the informant arranged for the detective to meet the DeJesus brothers to purchase, as before, two kilograms of cocaine. According to Detective Rivera, the informant told him that the DeJesuses had

**2.** We refer throughout to the Guidelines and policy statements in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4), (5) (1988);

*United States v. Lara,* 905 F.2d 599, 602 (2d Cir.1990).

agreed to sell one kilogram on October 18, and, if all went well, a second kilogram the day after. Thus, although on the day of the arrest on October 18 only one kilogram was produced, the district court's finding that two kilograms were negotiated was not clearly erroneous.

There was also sufficient evidence from which to infer that the DeJesus brothers were capable of producing the second kilogram. On October 16, after Amabledeyes DeJesus told Detective Rivera that he and his brothers could supply two kilograms, he added that if this sale went smoothly, there was no reason why they could not do a steady business. By October 18, the DeJesus brothers had actually produced a total of 1,213 grams of cocaine.[3] In light of appellants' own statements and actions, we cannot characterize as clearly erroneous the district court's conclusion that appellants were reasonably capable of producing at least two kilograms of cocaine.

 As for Julio DeJesus's contention that he was denied due process because the district court failed to notify him that it would rely on facts from his brothers' trial in setting his base offense level, this claim is without foundation. To be sure, the PSR on Julio DeJesus did not specifically state that facts from his brothers' trial would be employed to rebut his claim that his conspiratorial involvement was limited to one kilogram of cocaine. However, the PSR did set forth all the facts established at that trial that Judge Platt later relied on in finding that the offense involved two kilograms. By providing the appellant with a copy of the PSR, the Government provided him with notice of all the relevant information that could be used against him, and at his sentencing hearing, appellant had a meaningful opportunity to challenge the accuracy and sufficiency of this information. Due process requires no more. *See United States v. Romano*, 825 F.2d 725, 729–30 (2d Cir.1987); *accord United States v. Notrangelo*, 909 F.2d 363, 365–66 (9th Cir.1990); *United States v. Castellanos*, 904 F.2d 1490, 1495–96 (11th Cir.1990).

## II

Our holding that Julio DeJesus's sentencing satisfied due process requirements does not mean that we are entirely happy with the manner of sentencing in this case, however. On the contrary, we are quite troubled by the escalating number of appeals from convictions based on guilty pleas in which the appellant claims that he was unfairly surprised by the severity of the sentence imposed under the Guidelines. In particular, we note the distressingly large number of appeals involving defendants indicted for drug offenses who, at the time of tendering their pleas, were apparently unaware of the quantity of drugs that could be included in calculating their base offense levels.[4] While these defendants may have entered their pleas "knowingly and voluntarily" in the constitutional sense, we are, given our own struggles with the Guidelines, not unsympathetic to their claims that they did not fully appreciate the consequences of their pleas. *Cf. United States v. Stanley*, 928 F.2d 575, 578 (2d Cir.1991) (defendant allowed to withdraw plea where Government's agreement to drop greater charge did not affect applicable Guideline range, and therefore offered no benefit to defendant). Whether this phenomenon is at least partly the fault of the defense bar is immaterial. The net

---

3. This amount includes a 27 gram sample given to Detective Rivera on August 30, 1989, 186.9 grams sold to him on September 26, 1989, and one kilogram seized by him on October 18, 1989.

4. For a random sample of those reported, see *United States v. Madkour*, 930 F.2d 234, 237–38 (2d Cir.1991); *United States v. Cousineau*, No. 90–1400, 929 F.2d 64, 66–68 (2d Cir.1991); *United States v. Moon*, 926 F.2d 204, 208–10 (2d Cir.1991); *United States v. Cardenas*, 917 F.2d 683, 686–87 (2d Cir.1990); *United States v. Vaz-* *zano*, 906 F.2d 879, 882–84 (2d Cir.1990); *United States v. Santiago*, 906 F.2d 867, 871–73 (2d Cir.1990); *United States v. Copeland*, 902 F.2d 1046, 1050 (2d Cir.1990); *United States v. Adames*, 901 F.2d 11, 11–12 (2d Cir.1990); *United States v. Bedoya*, 878 F.2d 73, 75–76 (2d Cir.1989) (per curiam); *United States v. Fernandez*, 877 F.2d 1138, 1142–44 (2d Cir.1989); *United States v. Paulino*, 873 F.2d 23, 25 (2d Cir. 1989) (per curiam); *United States v. Correa–Vargas*, 860 F.2d 35, 37 (2d Cir.1988).

result is a steady parade of appeals that squander scarce judicial resources and waste the Government lawyers' time.

■ Were the Government to "sentence bargain"—*i.e.,* offer to recommend or agree to a particular sentence pursuant to Fed.R.Crim.P. 11(e)(1)(B) or (C)—rather than simply "charge bargain"—*i.e.,* offer to drop or reduce some of the charges pursuant to Fed.R.Crim.P. 11(e)(1)(A)—defendants' decisions to enter plea agreements would be more informed and most, if not all, of these appeals could be avoided. At oral argument, the Government indicated that it is reluctant to sentence bargain because it believes that, although the Federal Rules require judicial review of both sentence and charge bargain arrangements, *see* Fed.R.Crim.P. 11(e)(2); *see also* U.S.S.G. § 6B1.2(a)-(c), courts will accord greater deference to agreements to reduce charges than to sentencing recommendations. Apparently, the belief is that prosecutors' considerable discretion to dismiss entire cases under Fed.R.Crim.P. 48(a) [5] somehow enhances their authority to dismiss or reduce charges under Rule 11(e)(1)(A), such that courts will accord the latter decisions the same extremely deferential treatment they accord the former, while reserving a wide latitude to reject sentence bargains under Rules 11(e)(1)(B) and (C). We fail to see how this could be. Where charges are dismissed as bargaining chips, the primary effect is to limit the judge's discretion over the duration of imprisonment. *See Stanley,* 928 F.2d at 582 ("[I]f plea bargains could not alter sentences, most defendants would have little interest in bargaining"); Alschuler, *The Trial Judge's Role in Plea Bargaining, Part I,* 76 Colum.L.Rev. 1059, 1074 (1976). Therefore, as several pre-Guidelines cases recognized, the district court's discretion to reject a charge bargain is more akin to its

discretion over sentencing matters than to its more limited discretion to refuse to grant a Rule 48(a) motion to dismiss an indictment. *See United States v. Carrigan,* 778 F.2d 1454, 1463–64 (10th Cir.1985); *United States v. Escobar Noble,* 653 F.2d 34, 36–37 (1st Cir.1981); *United States v. Bean,* 564 F.2d 700, 704 (5th Cir.1977); *cf. United States v. Ammidown,* 497 F.2d 615, 623 (D.C.Cir.1973) (suggesting that a prosecutor's decision to drop an offense, if not shown to be related to a prosecutorial purpose, might be taken as an intrusion on the judicial sentencing function).[6] Thus, there is no reason to believe that district courts would look more favorably on charge bargain agreements than on agreements as to sentences.

The notion that judges might frown on sentence bargain agreements evolved at a time when courts enjoyed a virtual monopoly over sentencing decisions. *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (noting, in a pre-Guidelines case, the almost limitless grounds on which a sentencing judge could base a decision). Today, under the Guidelines, the discretion of federal courts with regard to sentencing is greatly restricted. Given that the Guidelines have so circumscribed the judiciary's traditional role in sentencing, we think it even less likely now than before that judges would resist sentence bargains as undue or unseemly intrusions on the judicial function.

Of course, prosecutorial reluctance to sentence bargain may have its roots in something other than a fear of judicial interference. For instance, prosecutors may believe that sentence bargaining will somehow reduce their ability to ensure or effectuate cooperation or the like; however, such considerations are of questionable relevance at the final sentencing stage unless incorporated within the bargain

---

**5.** Rule 48(a) provides that prosecutors may, "by leave of court," file a dismissal of an indictment, information or complaint. A court is generally required to grant a prosecutor's Rule 48(a) motion unless dismissal is "clearly contrary to manifest public interest." *United States v. Cowan,* 524 F.2d 504, 513 (5th Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976); *accord United States v. Carrigan,*

778 F.2d 1454, 1463 (10th Cir.1985); *United States v. Miller,* 722 F.2d 562, 566 (9th Cir.1983).

**6.** *United States v. Miller,* 722 F.2d 562, 564–66 (9th Cir.1983), provides some dicta to the contrary. *But see Carrigan,* 778 F.2d at 1464 n. 10 (distinguishing *Miller* ).

struck. It is also possible that prosecutors disfavor sentence bargaining simply because they consider the idea of haggling over months and years of imprisonment to be distasteful or unseemly. In this new era of labyrinthine sentencing guidelines and proliferating sentencing appeals, however, prosecutors would do well to rethink those views.

■ Even if prosecutors are unwilling to engage in sentence bargaining, appeals involving claims of unfair surprise would be significantly reduced if the Government would at least inform defendants, prior to accepting plea agreements, as to the likely range of sentences that their pleas will authorize under the Guidelines. To be sure, the Government is under no legal obligation to provide this information. *See United States v. Fernandez*, 877 F.2d 1138, 1143 (2d Cir.1989) ("The fact that the government's attorney did not explain the applicable Guidelines sentencing range to appellant violated no duty that the government owed to him and thus provides no basis for a finding of reversible error."). However, given the Government's unique expertise in muddling through the complexities of the Guidelines, providing defendants with this information would hardly be a great burden. Certainly, it would take less time than having to brief and argue an entire appeal. In *Fernandez*, we recognized the desirability of having "each defendant, at the time of tendering a guilty plea, ... fully cognizant of his likely sentence under the Sentencing Guidelines." *Id.* Consequently, we suggested that district courts should, where feasible, explain to defendants before accepting their pleas what sentence is likely to be imposed. *Id.* at 1144. Here, we invite Government attorneys to play a similar role in helping to ensure that guilty pleas indeed represent intelligent choices by defendants.

### III

■ Appellants raise two additional garden-variety Guidelines challenges, neither of which has merit. Amabledeyes DeJesus argues that the court erred in denying him a two-level reduction for acceptance of re-

sponsibility under U.S.S.G. § 3E1.1. According to appellant, he is entitled to the reduction for having stated, at the time of sentencing: "Please forgive me for my participation in the transaction.... I will never do it again." However, appellant not only maintained his innocence throughout trial, but also continued to minimize his guilt even after his conviction. For example, in his pre-sentence interview, he admitted to having alerted Detective Rivera that brother Julio had the cocaine, but denied any further participation in the transaction. The district court therefore acted well within its discretion in discrediting the sincerity and completeness of appellant's belated acknowledgement of guilt. *See United States v. Moskowitz*, 883 F.2d 1142, 1155 (2d Cir.1989).

■ Similarly groundless is Juan DeJesus's contention that the district court erred in denying him a two-level reduction on the ground that he was a "minor participant" within the meaning of U.S.S.G. § 3B1.2(b). The evidence indicates that the three DeJesus brothers were involved on an equal basis in operating their drug business, each performing an essential role in the success of the enterprise. Juan DeJesus was present on both occasions that Detective Rivera negotiated to purchase drugs from the brothers. On the day that the one kilogram was delivered, it was Juan DeJesus who was entrusted with guarding Rivera and the money while Amabledeyes and Julio DeJesus went to get the drugs. Moreover, on that day, Juan DeJesus alone among the brothers was in possession of a weapon. In light of this and other evidence, there was no reason to believe that Juan DeJesus was significantly "less culpable" than his brothers. *See* U.S.S.G. § 3B1.2 application note 3. The district court's conclusion that Juan DeJesus was not a minor participant was therefore entirely appropriate and, in any event, not clearly erroneous. *See United States v. Rios*, 893 F.2d 479, 481 (2d Cir.1990) (determination of a defendant's role in an offense is a factual finding subject to clearly erroneous standard of review).

For all the foregoing reasons, appellants' sentences were proper under the Guidelines. The judgment of the district court is therefore affirmed.

KEARSE, Circuit Judge, concurring:

I concur in parts I and III of the majority opinion.