Roberto CAMPOSANO, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 05 CIV 3737(VM).

United States District Court, S.D. New York.

May 15, 2006.

---

400

Robert Camposano, Ray Brok, NY, Pro se.

### *DECISION AND ORDER*

MARRERO, District Judge.

*Pro se* Petitioner Roberto Camposano ("Camposano") filed the present motion for modification or reduction of his sentence pursuant to 18 U.S.C. § 3742(f)(1), which was construed by the Court as a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Camposano argues that his sentence was unfairly imposed because it was improperly enhanced based on prior convictions. For the reasons set forth below, Camposano's motion is denied.

## I. BACKGROUND

### A. FACTS AND PROCEDURAL HISTORY

Camposano pled guilty before this Court on April 4, 2003 to one count of illegally reentering the United States after deportation following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). *See* Transcript of Plea Proceedings, *United States v. Camposano–Baez*, No. 03 Cr. 0159 (S.D.N.Y. Apr. 4, 2003) ("Plea Transcript"). The Court sentenced Camposano on December 4, 2003 to 57 months incarceration followed by three years of supervised release. Camposano filed a notice of appeal on December 29, 2003. On July 27, 2004, the Second Circuit issued an order summarily affirming this Court's judgment. *See* Order, *United States v. Camposano–Baez*, No. 04–0497–Cr (2d Cir. July 27, 2004). Camposano is currently serving the sentence imposed by this Court at the Federal Correctional Institution in Ray Brook, New York.

Camposano's motion for modification or reduction of his sentence pursuant to 18

U.S.C. § 3742(f)(1) was dated March 28, 2005 and received by the Pro Se Office of this Court on April 1, 2005. By order dated August 12, 2005, Chief Judge Mukasey, noting that district courts do not have jurisdiction under 18 U.S.C. § 3742 to review a final sentence, construed Camposano's submission as a petition under 28 U.S.C. § 2255 (" § 2255") and indicated that if Camposano did not withdraw his motion within 60 days, it would remain designated as a petition under § 2255. As Camposano did not withdraw the petition, the case was assigned to this Court on October 5, 2005.

### B. CAMPOSANO'S PETITION TO VACATE, SET ASIDE OR CORRECT THE SENTENCE

Camposano's petition was filed in a timely manner. A petition under § 2255 must be filed within one year from the latest of

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. As the Second Circuit affirmed Camposano's judgment of conviction on July 27, 2004, that judgment became final on October 25, 2004, after the 90–day period for seeking Supreme Court review expired. *See Clay v. United States,* 537 U.S. 522, 532, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). Camposano filed his motion well within one year of that date, and it is therefore timely under § 2255.[1]

In his motion, Camposano contends that his sentence was unfairly imposed because it was improperly enhanced based on prior convictions. He makes several arguments in support of why such enhancement was improper, including that the enhancement occurred without the Government filing an information pursuant to 21 U.S.C. § 851, that the enhancement fell outside the parameters of his plea agreement, and that the court imposed a career offender enhancement without prior notice of the impact of the career offender provisions of the United States Sentencing Guidelines ("U.S.S.G."). However, as set forth below, a review of the record plainly reveals that none of these arguments withstands scrutiny.

## II. DISCUSSION

### A. LEGAL STANDARD FOR SUMMARY DISMISSAL

"If it plainly appears from the [§ 2255] motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see Garcia Montalvo v. United States,* 862

---

1. A pro se petition is deemed filed on the date the inmate delivers it to the prison officials for transmittal to the court. *Noble v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.2001). Although the Court is unable to discern from the papers submitted when Camposano handed the petition to correctional officials for mailing, the petition is dated March 28, 2005, and is stamped as received by the Pro Se Office of the Southern District of New York on April 1, 2005. The motion was therefore clearly filed within the one-year statute of limitations.

F.2d 425, 426–27 (2d Cir.1988) (per curiam) (upholding the district court's summary dismissal of § 2255 motion).

## B. *DISCUSSION*

### 1. *Government's Alleged Failure to File Information Pursuant To 21 U.S.C. § 851*

Camposano's principal argument is that his sentence should be reduced because the Government did not comply with 21 U.S.C. § 851 (" § 851") because it failed to file a prior conviction information with the Court and serve a copy of the information upon defense counsel or Camposano. He contends that, as a result of this defect, his sentence must be reduced as having been improperly founded upon a prior conviction enhancement.

■ Even assuming the alleged facts to be true, Camposano plainly is not entitled to a reduction of his sentence because § 851, by its own terms, is limited to offenses under Chapter 13 of Title 21 of the United States Code ("Drug Abuse Prevention and Control"). *See* 21 U.S.C. § 851(a)(1) ("No person who stands convicted of an offense *under this part* shall be sentenced to increased punishment by reason of one or more prior convictions unless ... the United States Attorney files an information with the court (and serves a copy of such information on the person or counsel of the person) stating in writing the previous convictions to be relied upon.") (emphasis added). Camposano pled guilty to illegal reentry under 8 U.S.C. § 1326(a) and (b)(2). Since this offense does not fall under Title 21 of the United States Code, the requirements of § 851 do not apply. *See Leung v. United States*, No. 01 Cr. 366, 2003 WL 22149526, at *3 (S.D.N.Y. Sept. 17, 2003) (rejecting petitioner's § 2255 motion for reduction of sentence on the grounds that the government did not comply with § 851 because petitioner "was convicted under Title 18 of

the United States Code, and therefore the provisions of Title 21 are not applicable to him"); *see also United States v. Garcia–Olmedo*, 112 F.3d 399, 401 (9th Cir.1997) (observing that § 851 "applies only to the enhancement of sentences for Title 21 offenses," and thus is inapplicable to a defendant convicted under 8 U.S.C. § 1326(b)), *overruled on other grounds, United States v. Ballesteros–Ruiz*, 319 F.3d 1101 (9th Cir.2003).

### 2. *Allegation That The Plea Agreement Did Not Include Prior Conviction Enhancement*

In addition to his claim based upon § 851, Camposano, citing *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), argues that his sentencing was defective because the Court's Sentencing Guidelines calculation included a sixteen-point increase in his base offense level for prior criminal convictions, but his plea agreement did not provide for this enhancement. Camposano plainly is not entitled to relief under this argument, as Camposano did not plead pursuant to a plea agreement. *See* Plea Transcript at 11–12.

■ Construing Camposano's submissions liberally, as required for *pro se* petitioners, *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999), it is possible that Camposano is arguing that his sentence contained enhancements that fell outside the *Pimentel* letter provided by the Government to defense counsel in accordance with *United States v. Pimentel*, 932 F.2d 1029 (2d Cir.1991). The *Pimentel* letter did not take into account that Camposano was on parole supervision at the time of the offense, and therefore incorrectly provided that Camposano's criminal history category was III, when it should have been IV. *See* Transcript, *United States v. Camposano–Baez*, No. 03 Cr. 0159 (S.D.N.Y. Dec. 4, 2003) ("Sentencing

Transcript"), at 3–4. However, his fact alone is insufficient as a ground for relief.

First, the Government informed defense counsel of the original miscalculation in the *Pimentel* letter prior to and at the sentencing proceeding, and defense counsel stated for the record that his client was informed of this fact and accepted the correct range as it was reflected in the Presentence Investigation Report ("PSR").[2] That Camposano and his counsel were informed of the correct range in the Sentencing Guidelines indicates that the purpose of *Pimentel* letters—ensuring "that guilty pleas indeed represent intelligent choices by defendants"—was fulfilled. *See Pimentel,* 932 F.2d at 1034. Moreover, even if the Government had failed to bring the original miscalculation to Camposano's attention, Camposano indicated prior to pleading guilty that he understood that the *Pimentel* letter might not be an accurate prediction of the sentence ultimately imposed.[3]

Second, *Pimentel* letters are binding neither upon the Government nor the sentencing court. *Id.* This point was impressed upon Camposano in both the plea [4]

---

2. The transcript of the sentencing proceeding includes the following exchange between John Sabot, Assistant United States Attorney; Peter M. Antioco, Attorney for Camposano; and the Court:

> MR. SABOT: Briefly, Judge. I just want to clarify something in regard to the Pimintel [sic] letter in this case, which is dated March 31, 2003. Although *the Pimintel* [sic] *letter* correctly calculated the defendant's offense level as being an offense level of 21, it *incorrectly calculated his criminal history category.* The Pimintel [sic] letter concludes that the defendant is in Criminal History Category III, when in fact it should be Category IV. Probation correctly made the conclusion. The reason for the disparity is the government did not include the fact that the defendant at the time of the instant offense was on New York state parole supervision. Because of that fact, *two additional criminal history points are added. . . .* And *the PSR,* probation report, *correctly reflects that.*
> So the initial guideline range that the government calculated in its Pimintel [sic] letter was 46 to 57 months, when in fact *the correct guideline range*—and I don't think defense counsel has any objection to this or has a different figure—*should be 57 to 71 months imprisonment.*
>
> THE COURT: Thank you. Mr. Antioco?
> MR. ANTIOCO: Yes, your Honor.
> THE COURT: Do you have any further comment to make at this time?
> MR. ANTIOCO: No, your Honor. I discussed it with Mr. Sabot earlier, and *I did discuss it with my client* . . . Although I was a little disappointed, *he accepts the report.*

*See* Sentencing Transcript at 3–4 (emphasis added).

3. The transcript of the plea proceedings includes the following exchange between Camposano and the Court:

> THE COURT: Do you understand that if your attorney or anyone else has attempted to estimate or predict what your sentence will be, it is possible that this estimate or prediction could be wrong, that no one, not even your attorney or the government, can or should give you assurance of what your sentence will be. . . . Do you understand this?
> THE DEFENDANT: Yes, sir.
> *See* Plea Transcript at 11–12.

4. The transcript of the plea proceedings includes the following exchange between Camposano; Philip Weinstein, Attorney for Defendant; and the Court:

> MR. WEINSTEIN: Your Honor, just for the record, there is a Pimentel letter written by Mr. Sabot, it was discussed with the assistance of a Spanish interpreter, and that provides the sentencing guidelines that the government believes are applicable to the case. *He's been told that that isn't binding on the Court,* but that is our view of how we believe the sentencing guidelines would apply to this case.
> THE COURT: All right. Mr. Camposano–Baez, having heard the explanation of your attorney concerning the sentencing guidelines, do you understand now what the sentencing guidelines are?
> THE DEFENDANT: Yes, sir.

and sentencing [5] proceedings.

As a final note, the Court highlights the fact that even if Camposano was entitled to rely upon the original *Pimentel* letter, which he was not, the recommended range in the letter was 46 to 57 months. The sentence imposed—57 months—clearly fell within this range. Thus, it cannot be argued that he was unfairly surprised by the sentence ultimately imposed by the Court.

### 3. Additional Arguments As to the Court's Calculation Under the Sentencing Guidelines

Camposano also contends that the Court improperly enhanced his base offense level of eight with a sixteen-point enhancement for a prior conviction, and improperly applied a career offender enhancement. However, a review of the sentencing calculation provided in the PSR and adopted by the Court reveals that the calculation was correct, and that such calculation did not include a career offender enhancement.[6]

### a. Offense Level

■ Under United States Sentencing Guidelines for the United States Courts ("U.S.S.G.") § 2L1.2, illegal reentry qualifies for a base offense level of eight. If the defendant was previously deported after a conviction for certain felonies, including crimes of violence and firearms offenses, the offense level is increased by sixteen levels. Camposano had been deported following a conviction for robbery in the first degree, which is a class B felony in New York and satisfies the Guidelines' definitions of a "crime of violence" and "firearms offense." *See* N.Y. Penal Law § 160.15; U.S.S.G. § 2L1.2 (Application Note 1(B)(iii) and (v)). The sixteen-point enhancement was thus properly applied. Pursuant to § 3E1.1, the offense level may be reduced up to three levels if the defendant accepts responsibility for the offense. This was the calculus reflected in the PSR and adopted by this Court at the sentencing hearing, yielding a total offense level of 21.

### b. Criminal History Category

■ As to the calculation of the appropriate criminal history category, Camposano mistakenly contends that the Court sentenced him with reference to U.S.S.G § 4B1.1, which addresses career offenders, without prior notice of the potential impact of the career offender enhancement. In fact, the calculation reflected in the PSR did not employ the career offender enhancement, but was properly based on the following factors. Two points were added pursuant to § 4A1.1(d) because Camposano was on parole at the time of his illegal reentry into the United States. Six addi-

*See* Plea Transcript at 10 (emphasis added). The Court then further confirmed with Camposano his understanding that *Pimentel* letters are not contracts and create no binding obligations upon the government:

> THE COURT: [D]o you understand that this *Pimentel* letter is not a contract and creates no obligation for the government?
> THE DEFENDANT: Yes, sir.

*See Id.* at 13.

5. During the sentencing proceeding, John Sabot, Assistant United States Attorney made the following statement:

> MR. SABOT: . . . As all of the government's Pimintel [sic] letters make clear, *this is not*

*a plea agreement,* and it is provide to defendants merely as an aid[ ], and it makes very clear in the letter that *it's used for informational purposes and it's the judge and the court who decides the sentence,* not the government, nor defense counsel *and not this Pimintel* [sic] *letter.*

*See* Sentencing Transcript at 4 (emphasis added).

6. The Court adopted the factual recitation in the PSR and its conclusions that a criminal history category of IV and an Offense Level of 21 were appropriate. *See* Sentencing Transcript at 6.

tional points were added pursuant to §§ 4A1.1(a) and 4A1.2(e) because Camposano had previously been sentenced to imprisonment for eighteen to fifty-four months for criminal possession of a loaded gun and two to six years for robbery in the first degree. This yielded a total of eight points, placing him in Criminal History Category IV.

With an offense level of 21 and a criminal history category of IV, the Guidelines recommended a sentence between 57 and 71 months imprisonment. The Court sentenced Camposano to 57 months imprisonment, followed by three years supervised release pursuant to § 5D1.2(a)(2).

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Docket No. 1) filed by petitioner Roberto Camposano on April 1, 2005 attacking his sentence pursuant to 28 U.S.C. § 2255 is DENIED; and it is further

**ORDERED** that no certificate of appealability will issue pursuant to 28 U.S.C. § 2253. The Clerk of Court is directed to close this case and any open motions under docket number 05 Civ. 3737.

**SO ORDERED.**