14-807
*Diaz v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**<u>SUMMARY ORDER</u>**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 9th day of December, two thousand fifteen.

Present:     ROBERT A. KATZMANN,
                    *Chief Judge*,
                 RALPH K. WINTER,
                 JOHN M. WALKER, JR.,
                    *Circuit Judges.*

_____

VICTOR DIAZ,

        *Petitioner-Appellant*,

            - v -                                              No. 14-807

UNITED STATES OF AMERICA,

        *Respondent-Appellee*.


For Petitioner-Appellant:        Jonathan I. Edelstein, Edelstein & Grossman, New York, NY.

For Respondent-Appellee:        Nola B. Heller, Michael A. Levy, Assistant United States Attorneys, of Counsel, *for*, for Preet Bharara, United States Attorney for the Southern District of New York, Attorney for the United States of America, New York, NY.

Appeal from the United States District Court for the Southern District of New York (McMahon, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the District Court is **AFFIRMED**.

Victor Diaz pleaded guilty to four counts of conspiracy to commit kidnapping and robbery and was sentenced to 262 months' imprisonment in 2009. This Court affirmed his conviction and sentence on direct appeal. *See United States v. Cedeno*, 437 F. App'x 8, 12 (2d Cir. 2011). Acting *pro se*, Diaz then filed a Section 2255 motion, arguing that his trial counsel was ineffective. Diaz's chief complaint appears to be a language barrier; Diaz's trial counsel did not speak Spanish, and Diaz's understanding of English is apparently limited. The District Court denied Diaz's motion without a hearing and declined to issue a certificate of appealability.

Diaz appealed and moved for a certificate of appealability. This Court granted his motion on the "limited issue" of whether the district court should have construed Diaz's § 2255 motion as raising a claim of ineffective assistance of counsel under *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012), in which the Supreme Court held that an attorney's failure to communicate a plea offer to a criminal defendant can constitute ineffective assistance of counsel. Diaz's motion was denied and his appeal dismissed in all other respects.

Diaz now argues that we should construe his *pro se* claim broadly to encompass a claim of ineffective assistance under *Frye* and remand for an evidentiary hearing on the merits. The government responds that Diaz's motion did not put forth any argument that can be read as a *Frye* claim, but even if it had, "it would have been flatly contradicted by the record." Red 17.

We find that Diaz's Section 2255 motion did not include a claim that his counsel failed to inform him of the government's plea offer. It is also clear from the record that Diaz's trial counsel did inform him of the government's offer. Diaz, speaking on his own behalf to the Court,

2

rejected the deal and explained his reasoning in detail. Accordingly, we find that *Frye* is inapplicable, and we affirm the District Court's judgment.

## BACKGROUND

In 2007, Diaz and several co-defendants were indicted on charges of kidnapping, armed robbery, and conspiracy in connection with a scheme to kidnap tractor-trailer drivers and steal their cargo for resale. The government initially offered a group plea deal to all of the defendants, including Diaz, contingent on the entire group accepting it. After three joint defendant/counsel meetings, the group rejected the offer.

The government then offered Diaz an individual plea deal, under which he would plead guilty to conspiracy to commit robbery only, and the kidnapping charge would be dropped. At the same time, the government provided Diaz with a *Pimental* Letter, explaining the sentencing guidelines if Diaz pled guilty to the entire indictment. *See United States v. Pimental*, 932 F.2d 1029, 1034 (2d Cir. 1991). Diaz informed his appointed counsel that he wanted to plead guilty, but refused to accept the government's terms.

At a plea colloquy before the magistrate judge, with an interpreter present, Diaz's trial counsel explained to the Court that he was "in a bit of a predicament because I don't want to prevent my client from pleading guilty if, in fact, that's what his desire is. However, I've explained to him at length what the procedures are. So I don't know if there's—there seems to be a breakdown in communication between myself and Mr. Diaz. However, I want to give him that opportunity so that, later on, there's never any question that he didn't have an opportunity to plead guilty." G.A. 5.

Diaz requested to speak to the Court directly, even though the magistrate judge warned Diaz that anything he said could be used as evidence against him. Diaz's counsel similarly

3

advised him against speaking. Diaz explained that he wanted to take responsibility for his involvement in the robberies, but he did not want to plead guilty to a charge that included the use of force. He indicated to his attorney that because he did not know that force would be used, he would not plead guilty under the Government's deal. *Id*.

> At the end of the proceeding, Diaz's trial counsel attempted to clarify the situation:

> I was aware of what his—you know, that it was a partial—I don't want to call it partial admission, but I didn't want to prevent him from coming before the Court, because he's indicated to me that he wanted to plead guilty. I did tell him that I didn't believe it would be a sufficient allocution if, in fact, he pled to what he pled to here. It didn't get us, therefore, based on what he's charged with, a sufficient allocution, and that's where I wanted to make sure he had his opportunity.

> I advised him against speaking for the very reason that now the government has additional information that they can use later on at trial against Mr. Diaz, but I was in a situation here he didn't want to follow my advice. I also was in a situation where I wanted to have him have the opportunity to attempt to plead.

G.A. 19. The Court responded that "I think you were absolutely correct in what you did and the manner in which it's been conducted." *Id*.

Exactly one month after that proceeding—with less than one week to go before the scheduled trial date—Diaz changed his mind and agreed to plead guilty to all charges, without the benefit of a plea deal. At the plea colloquy, Diaz affirmed in response to the Court's inquiry that he understood "everything that's happening here today, that we're talking about." J.A. 158–59. Diaz also affirmed that he understood the charges against him and openly admitted his role in the crime. During the colloquy, Diaz requested to speak with his counsel twice, and both times counsel raised Diaz's issue with the Court. Diaz confirmed that he was satisfied with his counsel's representation and that his counsel had explained the sentencing process to him.

4

The District Court ultimately sentenced Diaz to 262 months on the kidnapping counts and 240 months on the robbery counts, to be served concurrently. The sentence was on the low end of the Guidelines range, but more than Diaz's counsel had advocated for.

With the assistance of new counsel, Diaz appealed to this Court. We affirmed his judgment of convictions and sentence by summary order. *See Cedeno*, 437 F. App'x at 12. Diaz then filed a petition for a writ of *certiorari*, which the Supreme Court denied. *See Diaz v. United States*, 132 S. Ct. 315 (2011).

Acting *pro se*, Diaz next filed a Section 2255 motion, accompanied by a 13-page memorandum of law. In his Section 2255 motion, Diaz claimed that his trial counsel "failed to explain all the procedural elements of . . . Rule 11(a) and subsequent provisions[], [and] he also failed to provide adequate assistance at [the] plea colloquy. . . ." J.A. 7. Diaz also alleged that his appellate counsel was ineffective, and that the District Court judge was biased against him. Those claims are not before us in this appeal.

As relevant to the limited issue before us, Diaz claimed that his trial counsel "knowingly and recklessly denied effective assistance during defendant's most difficult decision: 'Open Plea of Guilty.'" J.A. 20. The gist of Diaz's complaint seems to be that because his counsel could not effectively communicate with him, Diaz did not understand the effect of pleading guilty without a deal. Diaz further asserts that he had perceived his attorney as having "near biblical authority" on legal issues, and was therefore disappointed that his counsel was not more effective in negotiating a plea bargain on his behalf. J.A. 21.

Diaz did not argue in his motion or memo that his trial counsel did not inform him of the government's plea deal. It is only in his reply brief to the government's opposition memo that Diaz raised that claim, albeit without any elaboration or citations to the record: "As shown on his

5

failure to communicate that the Government had a plea offer to Diaz, moreover he did not discussed with defendant the merits of the government's case, neither inform the terms of the plea bargain." J.A. 325.4.

The District Court denied Diaz's motion as without merit, finding that there was no need for a hearing. The District Court also declined to issue a certificate of appealability because it found that there was no "substantial showing of the denial of a constitutional right," and any appeal "would not be taken in good faith." S.P.A. 8–9. Diaz appealed and moved for a certificate of appealability. This Court granted his motion on the limited issue of whether Diaz had raised a claim of ineffective assistance of counsel under *Frye*.

### STANDARD OF REVIEW

We review a district court's denial of a hearing on a Section 2255 motion for abuse of discretion and the underlying question of whether defense counsel rendered ineffective assistance *de novo*. *See Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). A defendant alleging ineffective assistance must show first "that counsel's representation fell below an objective standard of reasonableness"; and second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The Supreme Court clarified in *Frye* that failing to inform the defendant of a formal plea offer constitutes ineffective assistance under *Strickland*. *See Frye*, 132 S. Ct. at 1408 ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. . . . When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.").

6

Because Diaz drafted his motion *pro se*, he is "entitled to a liberal construction of [his] pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). "The justification for this policy is apparent. If the writ of habeas corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoners." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983).

But reviewing a *pro se* petition with a "lenient eye" does not mean that the defendant's case is always entitled to proceed: "Where . . . a petition fails even vaguely to suggest an essential element of a claim for relief, the district court is not required to overlook the deficiency." *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam). Similarly, we have observed that the district court is not required to hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that a petitioner is entitled to no relief." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(a)). "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *United States v. Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987). "The critical question is whether the[] allegations, when viewed against the record of the plea hearing, [a]re so palpably incredible, so patently frivolous or false, as to warrant summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (citations and internal quotation marks omitted).

## DISCUSSION

Diaz contends that his difficulties in communicating with his trial attorney during the pleading process amounted to a failure by his counsel to inform him of the government's offer.

7

Although he did not explicitly raise this claim in his *pro se* pleading before the District Court, Diaz contends that we should read that pleading as including the "suggestion" that *Frye* applies.

**1.      On Its Face, Diaz's Motion Did Not Suggest A *Frye* Claim**

Although Diaz contends that he did not understand his attorney, he did not argue or suggest in his motion or supporting memorandum below that his counsel failed to inform him of the government's offer. Only in Diaz's reply to the government's opposition memorandum does he mention a claim that could plausibly be interpreted as a *Frye* claim. This Court has long made clear, though, that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). This rule applies with the same force to *pro se* litigants. *See, e.g.*, *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996).

**2.      Even Assuming Diaz's Motion Suggested a *Frye* Claim, Though, the Record is Clear that Diaz was Aware of the Government's Offer and Rejected It**

Even if Diaz's motion did not explicitly state a *Frye* claim, though, Diaz argues on appeal that we should liberally read it as "suggesting" one. We note that it is plausible a defendant could bring a successful *Frye* claim by arguing that trial counsel did not effectively communicate the government's plea offer because of a language barrier. That is, if the accused did not understand that the government had offered a deal, even though counsel relayed the message (in English), *Frye* might warrant relief. In such a case, the defendant could argue that he did not actually receive the effective assistance of counsel required under the Sixth Amendment. Such a holding would be consistent with the Court's reasoning in *Frye*, as well as our precedent requiring that defendants who need it have access to translation services. *Cf. United States ex rel. Negron v. State of N.Y.*, 434 F.2d 386, 390–91 (2d Cir. 1970) ("The least we can require is that a court, put on notice of a defendant's severe language difficulty, make unmistakably clear to him that he has

8

a right to have a competent translator assist him, at state expense if need be, throughout his trial.").

But that is not what happened in this case: Diaz had the assistance of an interpreter at all meetings with his counsel, and during his first plea colloquy, where Diaz personally rejected the government's offer and explained his reasoning to the Court. An interpreter was also present at his second (successful) colloquy, where he affirmed that he was satisfied with counsel's representation and understood the proceedings; at a conference to discuss his difficulties in communicating with his attorney; and at the sentencing proceeding. Although Diaz told the Court that he was scared and confused, he also affirmed on multiple occasions that he understood what was happening to him, and his fear stemmed from facing the consequences for his crime. It is thus clear from the record that Diaz's counsel informed him of the government's plea deal, advised him of the merits of the deal, and continued to provide assistance and guidance to Diaz after he rejected it in open court. The Court's holding *Frye* is thus not applicable.

Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

9