UNITED STATES of America,
Appellee,

v.

Miguel SOTO, Jose Cruz, Javier
Tavarez, Ismael Suren,
Defendants,

Isaac Almanzar, Benjamin Figueroa,
Luis Hernandez, Defendants–
Appellants.

Nos. 08–0654–cr, 08–0706–cr (Con).

United States Court of Appeals,
Second Circuit.

March 25, 2009.

Joseph Martini (Robert S. Hoff, on the brief), Wiggin and Dana LLP, New Haven, CT, for Appellant Almanzar.

Laurie S. Hershey, Manhasset, NY,* for Appellant Figueroa.

Winston M. Paes, Assistant United States Attorney (Benton J. Campbell, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Present Hon. ROBERT D. SACK, Hon. BARRINGTON D. PARKER, Circuit Judges, and Hon. TIMOTHY C. STANCEU,** Judge.

## SUMMARY ORDER

Isaac Almanzar and Benjamin Figueroa, the defendants here, challenge the district court's decision to calculate their applicable Guidelines ranges to be significantly higher than the ranges estimated in their plea agreements, and to sentence them within those ranges. Both agreed to plead guilty to a one-count indictment charging them and five others with conspiring to distribute and possessing with the intent to distribute "crack" (cocaine base) over a twenty-two-month period, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A). Figueroa pleaded guilty on November 17, 2006, to the lesser-included offense of violating 21

---

* By letter dated July 15, 2008, through counsel, Luis Hernandez withdrew his appeal.

** The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

U.S.C. § 841(b)(1)(B) by conspiring to distribute and possessing with the intent to distribute 5 grams or more of crack, and Almanzar pleaded guilty on December 8, 2006, to violating 21 U.S.C. § 841(b)(1)(A) by conspiring to distribute and possessing with the intent to distribute 50 grams or more of crack. The charges stemmed from the defendants' membership in the "Bushwick Tribe" of the Latin Kings gang and that "tribe's" ongoing narcotics sales.

At Almanzar's sentencing on February 1, 2008, the district court calculated his applicable Guidelines range to be 292 to 365 months and then sentenced him to 300 months of incarceration. At Figueroa's sentencing on February 20, 2008, the district court calculated his applicable Guidelines range to be 121 to 151 months and then sentenced him to 150 months' incarceration. We assume the parties' familiarity with the facts and procedural history of this case, and the issues presented on this appeal.

*Almanzar*

■ First, Almanzar insists that the government breached its plea agreement by arguing before the district court that it could find that Almanzar was a career offender. However, the government was freed from its obligations under the plea agreement because new information relevant to sentencing, Almanzar's 1992 robbery, became known to the government after the execution of that agreement. As this court noted in *United States v. Habbas,* 527 F.3d 266 (2d Cir.2008), the terms of a plea agreement such as Almanzar's, which base the government's obligations under the plea agreement on "information known to the government," serve "the important purpose of clarifying the government's freedom to advocate for a higher guideline range when its change of position is based on its *subsequent* acquisition of

aggravating information." *Id.* at 272 n. 1 (emphasis in original).

Almanzar also contends that the district court failed to give due consideration to the terms of the plea agreement in fashioning its sentence. However, the parties cannot stipulate away the district court's responsibility to calculate independently the applicable Guidelines range and to "form its own view of the nature and circumstances of the offense and the history and characteristics of defendant," as mandated and guided by 18 U.S.C. § 3553(a)(1). Almanzar cannot claim unfair surprise; he acknowledges that the district court was not bound by his plea agreement with the government. This fact was made clear to Almanzar by the government in the plea agreement, and by the district court at the plea itself. At his December 8, 2006, plea, Almanzar stated that he "underst[ood]" that the plea "is not going to bind [the court]." Almanzar Plea Tr. at 30. Under these circumstances, Almanzar's arguments are meritless. *See also United States v. Monas,* 178 Fed. Appx. 68, 69 (2d Cir.2006); *United States v. Griffiths,* 1997 WL 580797, at *2, 1997 U.S.App. LEXIS 26089, at *4 (2d Cir. 1997).

■ Almanzar also challenges the procedural reasonableness of his sentence. First, he claims that the district court erred in calculating his criminal history pursuant to *United States v. Driskell,* 277 F.3d 150, 151 (2d Cir.2002), and on that basis concluding that Almanzar was a career offender under the Guidelines. *See* U.S.S.G. § 4B1.1(a)(2007). He argues that the district court would have been justified under *Driskell* had it not taken into account the youthful offender adjudication when calculating his criminal history category calculation. It does not follow, however, that the court erred in failing to conclude otherwise. We are satisfied that

before counting Almanzar's youthful offender adjudication as a felony for purposes of the criminal history calculations, the court adequately, and on the record, "examine[d] the nature of th[e] prior proceeding, the sentence received and actually served and where the defendant was incarcerated," as required by *Driskell*, 277 F.3d at 151.

■ Almanzar further argues that the district court "committed procedural error by calculating a Guidelines range predicated on a conspiracy involving two kilograms of crack cocaine." Almanzar Br. 39. We review factual determinations by a district court underlying a sentence for clear error. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). Here, the drug amounts found by the district court were based upon a detailed investigation as set forth in the PSR. Although the stipulated drug weight was far more favorable to Almanzar than the calculated weight, the district court did not err in finding Almanzar responsible for kilos, rather than grams, of crack.

■ Almanzar asserts that the district court erred in failing to go beyond recent amendments to the Guidelines that reduced the disparity between the severity with which the advisory Guidelines treat a particular amount of crack compared with the same amount of cocaine powder—the "crack/powder ratio." The Supreme Court has recently concluded that in fashioning an appropriate sentence, a judge is entitled to depart from the crack/powder ratio set forth in the Guidelines, *see Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 564, 575, 169 L.Ed.2d 481 (2007). But there is no rule that a district court *must* so depart. Here, it is clear that the district court was "aware ... of its discretion to deviate from the crack cocaine ranges in light of the objectives of sentencing," *United States v. Regalado*, 518 F.3d 143, 150

(2d Cir.2008) but declined to exercise that discretion. That is permissible.

Many of Almanzar's procedural arguments are driven by his more substantive claim that the district court erred by treating him differently, and far more harshly, than his co-defendants when calculating his applicable Guidelines range. Upon full review of the record, however, we are satisfied that the district court did not err in concluding that any potential disparities between Almanzar and his co-defendants in terms of the Guidelines calculations and ultimate sentences imposed were not unwarranted, in light of the different roles that the different defendants played in the conspiracy.

*Figueroa*

■ Figueroa's principal argument on appeal is that the district court erred in failing to recognize its ability under *Kimbrough* to depart from the crack/powder ratio set forth in the Guidelines. *See Kimbrough*, 128 S.Ct. at 566. As we have recently recognized, "the record must unambiguously demonstrate that the District Court was aware of 'its discretion to consider that [the disparity between crack and cocaine powder offenses in the United States Sentencing Guidelines] might result in a sentence greater than necessary,' in order to avoid a remand pursuant to *United States v. Regalado*, 518 F.3d 143, 147 (2d Cir.2008)." *United States v. Keller*, 539 F.3d 97, 98 (2d Cir.2008). Here the record on appeal clearly demonstrates that the district court understood its authority under *Kimbrough*. As Figueroa notes, his counsel raised the issue and argued the point at some length. Moreover, the district court also addressed the issue in the context of Almanzar's sentence, which preceded Figueroa's. As the district court said at that time,

In some of these cases [after taking into account the Section 3553(a) factors], I have found that the [crack/powder] ratio did impact overly severely with respect to the sentence to be imposed on a particular defendant. But, again, what *Kimbrough* and *Gall* still teach[ ] is that in taking a look at these § 3553(a) factors, the Court has to make a particularized finding in each case.

Almanzar Sentencing Tr. at 44. Under the facts of this case, we have no doubt that the district court understood the scope of its discretion under *Kimbrough* although it declined to exercise that discretion in Figueroa's favor.

Figueroa also contends that the district court "effectively rejected and nullified the plea agreement." Figueroa Br. at 20. But the district court did not reject the agreement; in fact the court adopted certain aspects of it. For example, the court subtracted two points for the global plea arrangement, even though that had not been recommended by the Probation Department. Similarly, the court adopted the stipulated drug quantities, notwithstanding its stated suspicion that the stipulated amount underestimated the full extent of Figueroa's responsibility. In any event, while the district court's conduct could conceivably support the withdrawal of his plea, Figueroa does not seek to do so.

Figueroa also argues that his sentence was substantively unreasonable. We conclude, however, that under the totality of the circumstances his sentence falls well within the boundaries of reasonableness.

We pause, finally, to note the striking size of the discrepancies between the sentences estimated at the time of the defendants' respective pleas, and those that were imposed. It would be understandable if they came as a considerable shock to the defendants when they were imposed. We have some concern that they may therefore have an adverse impact on the willingness of criminal defendants to engage in similar plea negotiations in the future. We conclude, nonetheless, that the sentences were well within the limits of legal permissibility. The judgment of the district court ·is therefore hereby **AFFIRMED.**