*United States v. Rivera*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2023
Argued: February 15, 2024
Decided: August 21, 2024

No. 22-2081

---

UNITED STATES OF AMERICA

*Appellee,*

*v.*

VICTOR RIVERA, AKA SEALED DEFENDANT 1,

*Defendant-Appellant,*

MICHOLS PENA, AKA SEALED DEFENDANT 2,
JOHAN ARAUJO

*Defendants.*

---

Appeal from the United States District Court
for the Southern District of New York

No. 20-cr-600, Alvin K. Hellerstein, *Judge*.

---

Before:        Jacobs, Chin, and Nathan, *Circuit Judge*s.

Defendant-Appellant Victor Rivera appeals from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) after pleading guilty pursuant to a plea agreement to participating in a Hobbs Act robbery conspiracy. On appeal, Rivera argues (1) that the Government breached the terms of the plea agreement, (2) that his sentence is procedurally and substantively unreasonable, and (3) that this case should be remanded for resentencing in light of an amendment to the Guidelines after his sentencing. We conclude that none of Rivera's challenges prevail.

Notably, although we find that the Government breached the plea agreement when it sought a higher Guidelines range than the one stipulated to in Rivera's plea agreement based on criminal history available to it at the time of the plea, we conclude that this error does not amount to a "plain" error under the applicable standard. Accordingly, we **AFFIRM**.

———

ANNA MARGARET SKOTKO, Skotko Law PLLC, New York, NY, *for Defendant-Appellant*.

ANDREW K. CHAN (Mathew Andrews, Danielle Renee Sassoon, Thomas John Wright, Alison Moe, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States

Attorney for the Southern District of New York, New York, NY, *for Appellee*.

————

NATHAN, *Circuit Judge*:

The Supreme Court has long acknowledged the "essential" role that plea bargaining plays in "the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260 (1971). Our Court has also encouraged prosecutors to inform defendants of their likely sentence range under the federal Sentencing Guidelines to enable defendants to more "fully appreciate the consequences of their pleas." *United States v. Pimentel*, 932 F.2d 1029, 1032 (2d Cir. 1991). It is therefore unsurprising that plea agreements today are commonly drafted to include stipulated sentence ranges that the parties agree not to dispute at sentencing. While stipulating to certain sentence ranges in a plea agreement can reduce "claims of unfair surprise" from defendants, *United States v. Wilson*, 920 F.3d 155, 163 (2d Cir. 2019) (quotation marks omitted), this is true only if the government actually keeps its promises.

The question in this appeal is whether the government breaches a plea agreement when it stipulates to a sentence range based on information "available" to it, then advocates for a substantially higher sentence based on criminal history information that it could have readily obtained. We hold that it does, though the error is insufficiently "plain" to warrant resentencing in the present case.

Furthermore, we reject Rivera's claim that the Government

3

breached his plea agreement by describing him as a leader. We likewise conclude that Rivera's procedural and substantive challenges to his sentence fail. Finally, we reject Rivera's request to remand this case for resentencing due to a recent amendment to the Sentencing Guidelines. Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

Between October 2019 and November 2020, Defendant-Appellant Victor Rivera participated in a robbery crew responsible for over a dozen robberies of jewelers and luxury watch owners. The robbery crew identified their potential victims on social media, before surveilling and ambushing them outside of their homes, often at gunpoint. Rivera was arrested, and a grand jury returned an 18-count indictment.

Pursuant to a plea agreement prepared by the U.S. Attorney's Office for the Southern District of New York, Rivera pled guilty to one count of participating in a Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951. Like many other plea agreements executed by the U.S. Attorney's Office, Rivera's agreement contained a stipulated Guidelines range that the parties agreed not to contest at sentencing.

The agreement stated as follows: "Based upon the information now available to this Office (including representations by the defense), the defendant has three criminal history points." App'x at 44. This placed Rivera into Criminal History Category II. The agreement also calculated a total offense level of 34, and as relevant here, imposed no role enhancement under U.S.S.G. § 3B1.1.

4

Together, these calculations resulted in a "Stipulated Guidelines Range" of 168 to 210 months' imprisonment. *Id*. at 45.

Rivera and the U.S. Attorney's Office agreed that "neither party [would] seek any departure or adjustment," nor "in any way suggest that" the sentencing court consider a departure or adjustment from the stipulated guidelines range, unless permitted by the agreement. *Id*. The parties were permitted to seek an adjustment in certain circumstances—for example, the parties could seek a variance based upon the sentencing factors under 18 U.S.C. § 3553(a), or "based upon new information that the defendant's criminal history category [was] different from that set forth" in the agreement. *Id*.

On April 8, 2022, the Probation Office issued its final Presentence Investigation Report (PSR). The PSR included three convictions Rivera obtained in Puerto Rico during 2012 and 2013 that were not accounted for in the plea agreement. In light of these additional convictions, Probation calculated ten criminal history points, significantly higher than the three criminal history points stipulated to in the plea agreement. This placed Rivera in Criminal History Category V. Probation calculated the applicable Guidelines sentence to be the statutory maximum of 240 months[1] but recommended a sentence of only 160 months.

In its sentencing submission, the Government agreed with the PSR's criminal history calculation and argued for a revised Guidelines range of 235 to 240 months' imprisonment, capped by the

---

[1] Probation also calculated a higher total offense level of 35 as opposed to the total offense level of 34 calculated in the plea agreement. The government did not, however, rely on this revised total offense level for its sentencing submission.

statutory maximum of 240 months.  The Government explained that it was advocating for a higher applicable Guidelines range than the stipulated range of 168 to 210 months because of Rivera's "extensive criminal history in Puerto Rico," which the Government "was unaware of . . . at the time of the plea agreement[.]"  App'x at 75.

At sentencing, defense counsel agreed that the applicable Guidelines range was 235 to 240 months.  However, he also explained that he had assumed that the Government "reviewed a rap sheet" prior to preparing the plea agreement and thus also "assumed when [Rivera] entered into these plea negotiations that the sentencing guideline range was what the [U.S. Attorney's Office] represented it to be."  App'x at 84–85.  Despite this, the district court agreed that the applicable Guidelines range was 235 to 240 months.

Rivera requested a 96-month term of imprisonment, arguing that a variance was warranted under the § 3553(a) factors in light of his difficult childhood and history of serious mental illness.  The Government advocated for a sentence within the applicable Guidelines range.  The district court agreed with the Government and sentenced Rivera to 235 months' imprisonment, to be followed by three years of supervised release.

## DISCUSSION

### I.  Breach of Rivera's Plea Agreement

On appeal, Rivera argues that the Government breached the terms of his plea agreement in two respects.  First, he argues that the Government breached the agreement by relying on his Puerto Rico convictions to advocate for a higher Guidelines range at sentencing.  Second, he argues that the Government breached the agreement by

describing him as a leader in its sentencing statements.  Although we agree that the Government's request for a higher sentence range violated the plea agreement, we nonetheless reject both arguments under the plain error standard.

"We review a plea agreement in accordance with principles of contract law and look to what the parties reasonably understood to be the terms of the agreement to determine whether a breach has occurred."  *United States v. Sealed Defendant One*, 49 F.4th 690, 696 (2d Cir. 2022) (quotation marks omitted).  "We do so by looking to the precise terms of the plea agreements and to the parties' behavior." *United States v. Helm*, 58 F.4th 75, 83 (2d Cir. 2023) (quotation marks omitted).

Ordinarily, the government enjoys disproportionate bargaining power in plea agreement negotiations.  *See United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002).  We accordingly "construe plea agreements strictly against the government and do not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness."  *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019) (quotation marks omitted).

### A.    New Information

Rivera argues first that the Government breached his plea agreement by relying on his 2012 and 2013 Puerto Rico convictions to advocate for a higher Guidelines range than the range stipulated to in the agreement.

An argument that the government breached a plea agreement is reviewed for plain error if the defendant failed to object in the district court.  *United States v. MacPherson*, 590 F.3d 215, 218 (2d Cir.

7

2009). Rivera maintains that his attorney's objections at sentencing were adequate to preserve this argument. While a defendant need not object "on the specific ground that the government breached the plea agreement to preserve such a claim for appellate review, the defendant must object in a manner sufficient to apprise the court and opposing counsel of the nature of [his] claims regarding the impropriety of the [g]overnment's change in position." *United States v. Taylor*, 961 F.3d 68, 81 n.12 (2d Cir. 2020) (quotation marks omitted).

Rivera's objections fell short of this requirement. Although defense counsel explained at sentencing that Rivera expected only the criminal history contained in his plea agreement to be considered for his sentence calculation, he never specifically contended that any provision of the plea agreement was breached. To the contrary, defense counsel "agree[d] with" the district court in the calculation of the revised Guidelines range. App'x at 84. Rivera's general frustration that the applicable Guidelines range was higher than anticipated was, at best, an argument about fairness. None of his statements made at sentencing indicate he was alleging that the Government's advocacy amounted to a breach of Rivera's plea agreement. Accordingly, these objections were insufficient to apprise the Government and sentencing court of a legal claim for breach of the plea agreement.

We thus review this breach claim for plain error. "To establish plain error, a defendant must demonstrate: (1) error, (2) that is plain, and (3) that affects substantial rights." *Taylor*, 961 F.3d at 81 (quotation marks omitted). If all three requirements are satisfied, then we must also consider whether the error "seriously affects the

8

fairness, integrity, or public reputation of judicial proceedings." *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019).

In this case, we conclude that the Government broke its promise to abide by the stipulated Guidelines range at sentencing and therefore breached the plea agreement. Based on the terms of that agreement, Rivera reasonably expected that the Government would not rely on criminal history information "available" to it at the time of the plea to request a higher Guidelines range. However, the Government did exactly that when it relied on unsealed convictions that it was put on notice of and could have readily obtained at the time of the plea. The Government's reliance on this information to advocate for a higher Guidelines range was a violation of Rivera's reasonable expectations.

We start with the relevant terms of the plea agreement. There is no dispute that the plea agreement prohibited the Government from seeking an adjustment from the stipulated range of 168 to 210 months unless permitted by the agreement. Nor is there any dispute that the agreement allowed the Government to advocate for an adjusted Guidelines range based on "new information" about Rivera's criminal history. App'x at 45. The sole dispute here is whether Rivera's 2012 and 2013 Puerto Rico convictions constitute "new information" under the plea agreement.

We look to the "precise terms" of the plea agreement to discern "what the reasonable understanding and expectations of the defendant were as to the sentence for which he had bargained." *Wilson*, 920 F.3d at 163 (cleaned up). Here, the terms of the agreement provided that the parties may "seek an appropriately adjusted

9

Guidelines range … based upon new information that the defendant's criminal history category is different from that set forth" in the agreement. App'x at 45. What counts as "new information," then, depends on what information was already accounted for in calculating the "criminal history category … set forth" in the agreement. *Cf. United States v. Palladino*, 347 F.3d 29, 34 (2d Cir. 2003); *Wilson*, 920 F.3d at 164. And the agreement provided that the criminal history category was calculated "[b]ased upon the information *now available*" to the U.S. Attorney's Office. App'x at 44 (emphasis added). Read together, these provisions indicate that any criminal history information "available" to the U.S. Attorney's Office does not count as "new information" within the terms of the plea agreement. In other words, the Government agreed not to advocate for a higher sentence except in reliance on information that was not "available."

Since the plea agreement does not define "available," we look to the ordinary meaning of the term. *See Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 211 (2d Cir. 2021). As the Supreme Court has explained, "the ordinary meaning of the word 'available' is "'capable of use for the accomplishment of a purpose," and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)); *see also* Merriam-Webster's Unabridged Dictionary (3d ed. 1993) (defining "available" as "accessible or may be obtained"); Cambridge Dictionary (2d ed. 2008) (defining "available" as "able to be obtained, used, or reached"); The American Heritage Dictionary (5th ed. 2011) (defining "available" as "[c]apable of being gotten; obtainable"). Therefore, the Government may abandon its promise to recommend

10

the stipulated sentence range based on "new information" about Rivera's criminal history only if such information was not "accessible" and could not have been "obtained" by the Government at the time of the plea.

Our interpretation charts a middle ground between the parties' clashing readings of what counts as "new information." In its briefing, the Government argued that any information that the Government did not *know* about during the plea is "new information." At oral argument, the Government went further and suggested that the "new information" provision was a "carveout" provision broadly authorizing reliance on *any* criminal history information not accounted for in the agreement.

But these readings fail to capture the scope of information "available" to the Government at the time of the plea. Plea agreements are reviewed "in accordance with principles of contract law," *Wilson*, 920 F.3d at 162, which "require that all provisions of a contract be read together as a harmonious whole," *Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994). As we explained above, the scope of "new information" cannot be defined in isolation. It must be read alongside the provision specifying what information was already accounted for in calculating the stipulated sentencing range. That range was based on information "now available" to the U.S. Attorney's Office, not information "known to" the U.S. Attorney's Office, nor information "existing as of today."

For this reason, the Government's reliance on various cases from our Circuit is unavailing. Those decisions provide only limited guidance as they interpreted plea agreements containing different

11

language.  *United States v. Soto*, for instance, involved a plea agreement containing stipulations based on "information *known* to the government."  706 F. App'x 689, 691 (2d Cir. 2009) (summary order) (emphasis added).  Similarly, *United States v. Santana* involved a plea agreement reserving the government's right to modify its position "if it subsequently received previously *unknown* information."  112 F. App'x 787, 789 (2d Cir. 2004) (summary order) (emphasis added).[2]  In these cited cases, the government reserved a more expansive right to change its position as compared to what the government bargained for in the present case.  As this Court has explained, inclusion of "[t]he words, 'based on information known to the government,'" communicates "the government's freedom to advocate for a higher guideline range when its change of position is based on its *subsequent* acquisition of aggravating information." *United States v. Habbas*, 527 F.3d 266, 272 n.1 (2d Cir. 2008).  But here, the Government reserved its right to change its position based only on information not *available* to it at the time of the plea.  These terms convey different meanings because, put simply, information can be unknown to the government yet readily available, accessible, and obtainable.  *See* Merriam-Webster's Unabridged Dictionary (3d ed. 1993) (defining "know" as "perceive directly" and "have direct unambiguous cognition of").

A hypothetical posed at oral argument illustrates the point:

---

[2] The government also relies on *United States v. Johnson*, 93 F.4th 605, 617 (2d Cir. 2024).  But *Johnson* concerned the government's promise not to prosecute any other offenses not known to it at the time of the plea agreement.  Because Rivera's plea agreement does not contain a similar promise, *Johnson* offers little insight on how to interpret the terms disputed by the parties here.

12

Imagine the U.S. Attorney's Office simply misplaced a page of the rap sheet containing a defendant's past convictions. It proceeds to prepare a plea agreement that fails to account for those convictions. Under these circumstances, the government may have lacked knowledge of the past convictions, but the information at issue was nevertheless clearly *available*. Asked whether the "carveout" provision would apply in such a case, the Government still answered in the affirmative based on the Government's lack of knowledge. But traditional contract principles require us to give the precise terms in a plea agreement their plain and ordinary meaning. *See Dish Network Corp.*, 21 F.4th at 211. Under this principle, we may not read the words "information now available" to mean "information now known."

Nor can we adopt Rivera's preferred reading, which equates "new information" with information that "recently c[a]me into existence." Appellant's Br. at 19. On that interpretation, the plea agreement would suggest that the Government, in reaching the stipulated Guidelines range, has accounted for all criminal history information in existence at the time of the plea. But that reading similarly goes too far and does not comport with a defendant's "reasonable understanding and expectations" based on the ordinary meaning of the agreement terms. *Wilson*, 920 F.3d at 163. That is because there may well be cases in which criminal history information exists but is nevertheless not "available" to the government in the ordinary sense of the term because it may be infeasible for the government to obtain certain information. In a different context, we have explained that something can be "technically available" but

13

nonetheless not "available" under the plain meaning of the term if it is too confusing or opaque to reasonably pursue. *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (discussing the meaning of "available" administrative remedies under the Prison Litigation Reform Act). Here too, information can be *technically* available yet not considered "available" to the government if it is not reasonably obtainable. For example, a defendant's criminal history information might not be "available" where the government has no notice of its existence or simply lacks the means to obtain it. In those circumstances, a defendant cannot reasonably expect the government to have accounted for such information in calculating a stipulated sentence based on information "available" to it. Accordingly, we conclude that, under the plain terms of the plea agreement, a criminal defendant reasonably expects and understands that the government would not rely on criminal history information available to the U.S. Attorney's Office at the time of the plea as a basis to abandon the stipulated Guidelines range.

Under our reading of the plea agreement, then, the question in this case is whether the Government has shown that the criminal history information justifying an adjustment was previously unavailable (*i.e.*, not reasonably obtainable at the time of the plea). The answer is no. Not only has the Government failed to muster any explanation for its prior inability to account for Rivera's Puerto Rico convictions, but the Government conceded during oral argument that, had it tried, it could have obtained the relevant information. So while the U.S. Attorney's Office did not learn about Rivera's Puerto Rico convictions until it reviewed the PSR, we conclude that such

14

information was nonetheless "available," because it was reasonably obtainable by the U.S. Attorney's Office at the time of the plea. We reach this conclusion for two related reasons.

First, the Government was reasonably expected to investigate whether Rivera had Puerto Rico convictions because it was put on notice of the possibility of such convictions by Rivera's rap sheet. At oral argument, the Government explained that it used a rap sheet to prepare the plea agreement. This rap sheet contained Rivera's past arrests in Puerto Rico but did not mention whether the arrests led to convictions. The information about these arrests, however, should have prompted further investigation on the Government's part into whether the arrests resulted in convictions. That Probation, presumably relying on the same rap sheet, chose to conduct further due diligence into Rivera's Puerto Rico criminal history in preparing the PSR confirms that the rap sheet signaled the possibility that Rivera had Puerto Rico convictions.

Second, and relatedly, the information at issue was readily obtainable by the Government upon investigation. The Puerto Rico convictions were unsealed and thus available in public records. At oral argument, the Government conceded that it could have obtained this criminal history information by simply contacting the relevant Puerto Rico courthouses. The Government offers no reason for its failure to account for these unsealed convictions in the plea agreement. It is inexplicable, then, why the Government chose not to obtain this information after it was put on notice from the rap sheet of Rivera's prior arrests in Puerto Rico.

Finally, even if whether Rivera's Puerto Rico convictions were

"available" to the government was ambiguous, that would not aid the Government's case because we are obligated to construe all ambiguities strictly against the government. *See Wilson*, 920 F.3d at 162.

We thus conclude that Rivera's 2012 and 2013 Puerto Rico convictions was information "available" to the Government at the time of the plea and that the Government breached the plea agreement by relying on these convictions for its advocacy at sentencing.

In finding breach in today's case, we do not suggest that the Government acted in bad faith. But even if other factors such as high workload could explain the Government's failure to obtain Rivera's readily available relevant criminal history, they cannot excuse it. *Santobello v. New York*, 404 U.S. 257, 260, 262 (1971) ("That the breach of agreement was inadvertent does not lessen its impact."). We have, of course, acknowledged that the government is not immune to mistakes or oversights when preparing plea agreements. *See United States v. Habbas*, 527 F.3d 266, 272 n.1 (2d Cir. 2008). But where the government has chosen to bind itself to advocating for a stipulated Guidelines range, it must hold itself to that promise. A plea agreement, like any contract, binds one party to an obligation in exchange for a benefit. In exchange for the government's promise to abide by the stipulated sentence range, Rivera surrendered his constitutional right to a trial and relieved the government of its burden to prove his guilt beyond a reasonable doubt.

Both parties bound themselves to their respective commitments. Keeping its promise does not prevent the government

16

from carrying out its responsibilities to the sentencing court, because the government remains free to honestly answer any of the court's inquiries. But the distinction between answering inquiries and affirmative advocacy is one that matters. The government plays an outsized, and sometimes even a decisive, role at sentencing. *See United States v. Lawlor*, 168 F.3d 633, 637 (2d Cir. 1999). It is therefore imperative that the government be far more careful in fulfilling its responsibilities where plea agreements are involved.

In short, the goals of plea bargaining are best served when the defendant's criminal history is accurately reflected in the plea agreement. More information about the consequences of pleading guilty translates into a more rational and informed decision about whether to plead guilty at the expense of exercising one's constitutional right to a trial. Following that logic, our Court has repeatedly "recognized the desirability of having each defendant, at the time of tendering a guilty plea, fully cognizant of his likely sentence under the Sentencing Guidelines." *See Pimentel*, 932 F.2d at 1034 (cleaned up). This is especially imperative when over 97% of defendants in federal cases plead guilty. U.S. SENTENCING COMM'N, Annual Report 16 (2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/2023-Annual-Report.pdf [https://perma.cc/8MZG-U5BA]; *see also Lafler v. Cooper*, 566 U.S. 156, 170 (2012) ("[C]riminal justice today is for the most part a system of pleas, not a system of trials."). In this case, we conclude that the Government's efforts fell short.

Our finding that the Government breached, however, does not

17

end the analysis. To constitute plain error, a resulting error must also be plain and affect substantial rights. In this case, we ultimately conclude that the Government's breach was not sufficiently "clear" or "obvious" as to be "plain" error. *United States v. Aybar-Peguero*, 72 F.4th 478, 487 (2d Cir. 2023). Such an "error must be so plain that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)). But prior to today, we lacked Circuit guidance on how to read the term "available" used in Rivera's plea agreement to define the scope of the government's commitments. *Cf. Puckett v. United States*, 556 U.S. 129, 143 (2009) ("Plea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt."). It was not obvious to the trial judge, then, that the terms of the plea agreement prohibited the Government's reliance on Rivera's Puerto Rico convictions to advocate for a higher Guidelines range. Absent an objection by the defendant, we do not think the sentencing court had reason to believe that a breach occurred, much less that it was derelict in failing to remedy the breach. Thus, we conclude that any error was not plain.[3]

Therefore, while the Government committed a breach, Rivera does not satisfy the requirements of plain error review.

### B. Leadership Role

---

[3] Because we conclude that the error was not plain, we need not address whether it affected Rivera's substantial rights.

Rivera argues next that the Government breached his plea agreement by describing him as a leader in the conspiracy when the plea agreement contained no Guidelines enhancement for a leadership role under U.S.S.G. § 3B1.1. Because Rivera did not raise this objection below, we review this argument for plain error as well. *See United States v. Sealed Defendant One*, 49 F.4th 690, 696 (2d Cir. 2022).

We conclude that the Government's statement in its sentencing submission regarding Rivera's leadership role in the conspiracy was not error, much less plain error. In using those descriptors, the Government in no way suggested that any role enhancement under U.S.S.G. § 3B1.1 was warranted. Instead, the express terms of Rivera's plea agreement allowed the Government to "present" to the sentencing court "any facts relevant to sentencing." App'x at 45. And among the § 3553(a) sentencing factors are "the nature and circumstances of the offense," along with "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1), (2)(A). So, even if the facts surrounding Rivera's role in the conspiracy did not warrant a Guidelines enhancement under U.S.S.G. § 3B1.1, those facts remain relevant to the district court's application of the sentencing factors. Accordingly, we find no error.[4]

---

[4] There is some tension, at least in our summary orders, as to whether the Government may highlight a criminal defendant's leadership role without simultaneously seeking a leadership enhancement under U.S.S.G. § 3B1.1(a). *Compare United States v. Tokhtakhounov*, 607 F. App'x 8, 11 (2d Cir. 2015) (summary

Accordingly, we find Rivera's breach arguments meritless.

## II.  Sentencing Challenges

Rivera next challenges his sentence as procedurally and substantively unreasonable.  It is not.

We begin with Rivera's argument that his sentence was procedurally unreasonable because the district court misunderstood its discretion to apply a sentence below the applicable Guidelines range.  Applying a plain error standard of review, because Rivera did not raise this argument below, *see United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008), we disagree.

"A sentence is procedurally unreasonable when: the district court (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation."  *United States v. Diamreyan*, 684 F.3d 305, 308 (2d Cir. 2012) (quotation marks omitted).

Rivera's procedural unreasonableness challenge rests on his assertion that the record lacks an affirmative indication that the district court understood its authority to depart from the applicable Guidelines range.  But in the absence of record evidence suggesting

---

order) (finding no breach of the plea agreement when the Government characterized the defendants as "leaders of the criminal enterprise"), *with United States v. Robinson*, 634 F. App'x 47, 50 (2d Cir. 2016) (summary order) (finding a breach of the plea agreement when the Government described the defendant as a "managing member" of the conspiracy).  But even if we assume that the Government erred, Rivera cannot prevail under the plain-error standard.

otherwise, we "presume that the district court understands the extent of its sentencing authority." *United States v. Silleg*, 311 F.3d 557, 561 (2d Cir. 2002). And that is the case here; Rivera has failed to put forth any record evidence suggesting that the sentencing judge misunderstood his authority to impose a below-Guidelines sentence. We thus conclude that Rivera's sentence is procedurally reasonable.

Having found no procedural error, we next consider Rivera's substantive reasonableness challenge. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Even assuming review under an abuse-of-discretion standard, *see United States v. Thavaraja*, 740 F.3d 253, 258 n.4 (2d Cir. 2014), we conclude that Rivera's sentence is substantively reasonable as well.

"A sentence is substantively unreasonable when it cannot be located within the range of permissible decisions, because it is shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Osuba*, 67 F.4th 56, 68 (2d Cir. 2023) (quotation marks omitted). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc).

On appeal, Rivera argues that the district court's 235 month-sentence was substantively unreasonable given various mitigating factors, an overstated criminal history, and disparity as compared to the sentence recommended for one of the codefendants. But the record reflects that the district court acknowledged the mitigating factors in its sentencing, expressly taking into account Rivera's mental health history and difficult upbringing. The sentencing judge also

21

noted that despite his difficult circumstances, Rivera failed to acknowledge the harm caused by his crimes, including the gunshot injury suffered by one victim. And the record explains the disparity in the recommended sentence, as the codefendant had no prior criminal history, had participated in only two of the eleven robberies, had not carried a firearm, and had not injured any victims.

Rivera's disagreement with the district court's weighing of these factors alone does not render his sentence substantively unreasonable. We have explained that "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge, with appellate courts seeking to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case." *United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020) (alternation in original) (quotation marks omitted). And considering the totality of circumstances in this case, we find that Rivera's 235-month sentence—which we note falls at the bottom of the applicable Guidelines range—can surely "be located within the range of permissible decisions." *United States v. Degroate*, 940 F.3d 167, 174 (2d Cir. 2019) (quotation marks omitted).

We accordingly conclude that Rivera's sentence is both procedurally and substantively reasonable.

## III. U.S.S.G. § 4A1.1 Amendment

Lastly, we reject Rivera's request to remand this case for resentencing due to a recent amendment to the Sentencing Guidelines, which would reduce the offense level calculation for certain defendants under U.S.S.G. § 4A1.1. Although we may apply

post-sentence Guidelines amendments that "clarify their application," "we may not, in the first instance, apply post-sentence amendments that embody a substantive change to the Guidelines." *United States v. Jesurum*, 819 F.3d 667, 672 (2d Cir. 2016) (quotation marks omitted).  Here, however, the § 4A1.1 amendment effects a substantive change to the Guidelines and thus does more than merely clarify the applicability of § 4A1.1.  Specifically, the amendment (1) reduces the upward adjustment received by offenders who committed the instant offense while under any criminal sentence and (2) limits this adjustment to defendants with seven or more criminal history points.  *See* U.S. Sent'g Comm'n, Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,273 (effective Nov. 1, 2023); U.S.S.G. § 4A1.1(e).  Any argument seeking to retroactively reduce Rivera's sentence on this ground, however, must be raised before the district court in the first instance.[5]  We therefore deny Rivera's resentencing request.

## CONCLUSION

Accordingly, the judgment of the United States District Court for the Southern District of New York is **AFFIRMED**.

---

[5] Congress has indicated that this Guidelines amendment may be applied retroactively through a sentence reduction motion under 18 U.S.C. § 3582(c)(2). *See* U.S.S.G. 1B1.10.