22-360-cr
*United States v. Halls*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of October, two thousand twenty-five.

PRESENT:
> MICHAEL H. PARK,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                    22-360-cr

SHAMEEK J. HALLS, AKA JP, AKA MEEK,

> *Defendant-Appellant.*

---

FOR APPELLEE: JOSHUA ROTHENBERG, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY

FOR DEFENDANT-APPELLANT: MICHAEL P. ROBOTTI (Philip I. Tafet, *on the brief*), Ballard Spahr LLP, New York, NY

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED AND REMANDED** in part.

Shameek J. Halls pled guilty under a plea agreement to crimes stemming from his drug-dealing operation in Binghamton, New York. He was sentenced to a term of 240 months' imprisonment. He now appeals, arguing that (1) the district court erred in accepting his guilty plea because it did not comply with certain requirements under Federal Rule of Criminal Procedure 11, (2) the government breached the plea agreement, and (3) the district court erred in imposing two discretionary conditions of supervised release in the written judgment that it did not orally pronounce at sentencing. We assume the parties' familiarity with the underlying facts, the procedural history, and the parties' arguments on appeal.

The district court did not err in accepting Halls's guilty plea. To the contrary, the district court took sufficient steps to ensure that Halls understood the statutory penalties he was facing. Moreover, the government did not breach its plea agreement with Halls. The terms of the agreement make clear that it did "not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies." App'x at 34. In light of our recent ruling in *United States v. Maiorana*, --- F.4th ---, 2025 WL 2471027 (2d Cir. Aug. 28, 2025), however, we conclude that the district court erred in imposing discretionary conditions of supervised release that it did not orally pronounce at the sentencing hearing. A defendant's right to be present during sentencing "requires that all non-

2

mandatory conditions of supervised release," including both standard and special conditions, "be pronounced at sentencing." *Id.* at *4.

## I. The District Court Did Not Err in Accepting Halls's Guilty Plea

"Rule 11 provides that 'the court must address the defendant personally in open court' and 'must inform the defendant of, and determine that the defendant understands' a long list of things, . . . including 'any maximum possible penalty' and 'any mandatory minimum penalty.'" *United States v. Johnson*, 850 F.3d 515, 522 (2d Cir. 2017) (quoting Fed. R. Crim. P. 11(b)(1)).

"We apply plain error review under Rule 52(b) of the Federal Rules of Criminal Procedure to examine alleged violations of Rule 11 that were not objected to at the time of the plea." *Tellado v. United States*, 745 F.3d 48, 53 (2d Cir. 2014) (quotation marks omitted).[1] To establish plain error, a defendant must demonstrate that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (cleaned up).

Here, the district court asked the government to "please tell Mr. Halls and the Court what the maximum penalty would be for the counts involved." App'x at 58. The government explained the maximum penalties for each count, including a discussion of supervised release, special assessments, and forfeiture. *See id.* at 58-59. The district court then explained the Sentencing Guidelines and asked whether Halls understood what it had "just said about the

---

[1] Both parties agree that Halls failed to object at the change-of-plea hearing.

3

sentencing guidelines." *Id.* at 59. At that time, the district court did not ask Halls whether he understood the government's explanation of the statutory penalties. *See id.*

This was not plain error. First, we have "never held . . . that delegating to the Government the responsibility for explaining the applicable penalties constitutes reversible error under Rule 11." *United States v. Rodriguez*, 725 F.3d 271, 276 n.2 (2d Cir. 2013). Second, although it might have been "preferable" for the district court to ask Halls directly whether he understood the statutory penalties immediately following the government's recitation, the district court *did* ensure that Halls understood the statutory penalties. *Id.* at 277. For example, before accepting Halls's plea, the district court asked a series of questions about whether Halls had discussed the plea agreement—which contained the statutory penalties—with his attorney, discussed the consequences of pleading guilty with his attorney, signed the agreement, and understood it. *See* App'x at 60, 63. The district court also asked: "Now that you've heard about the potential statutory sentence and the guidelines, do you still wish to plead guilty?" *Id.* at 62. Halls responded: "Yes." *Id.* The district court thus properly found that Halls "underst[ood] the charges against him and the consequences of pleading guilty." *Id.* at 64.

## II. The Government Did Not Breach the Plea Agreement

"We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019) (quotation marks omitted). We "look to what the parties reasonably understood to be the terms of the agreement to determine whether a breach has occurred." *United States v. Rivera*, 115 F.4th 141, 146 (2d Cir. 2024) (quotation marks omitted). This involves examining "the precise terms of the plea agreements" and "the parties' behavior." *Id.* (quotation marks omitted). Because plea

agreements affect a defendant's "fundamental constitutional rights," we "construe plea agreements strictly against the government" and hold prosecutors "to meticulous standards of performance." *Wilson*, 920 F.3d at 162 (quotation marks omitted).[2]

"At sentencing, the government sought a two-point credible-threat enhancement and a two-point aggravating-role enhancement," which ultimately increased Halls's Guidelines range from 168 to 195 months to a range of 228 to 270 months. Appellant's Br. at 23-24. But Halls's argument that this violated his plea agreement fails.

Halls's plea agreement lists the statutory maximum and minimum penalties for the offenses to which he agreed to plead guilty. *See* App'x at 23-24. In addition, the plea agreement contains certain sentencing stipulations, including that "[t]he parties agree that the defendant is personally accountable for at least 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight in the charged offenses and relevant conduct," that Halls "admits that he maintained a premises for the purpose of distributing a controlled substance, resulting in a two-level increase under [United States Sentencing Guidelines ("U.S.S.G.")] § 2D1.1(12)," that the government would "recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3El.l(a)" if Halls demonstrated acceptance of responsibility and did not commit further crimes after signing the agreement, and that the government would "move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense

---

[2] If the defendant failed to object in the district court, we review "[a]n argument that the government breached a plea agreement . . . for plain error." *Rivera*, 115 F.4th at 146. The parties disagree over whether plain error is the proper standard of review here. But we need not resolve that issue because Halls cannot show that the government breached the plea agreement under any standard of review, as discussed below.

level pursuant to U.S.S.G. § 3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. § 3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct." *Id.* at 28 (cleaned up).

The plea agreement did not include an estimate of Halls's total offense level or calculate an estimated Guidelines range. It is true that the government estimated a Guidelines range at the change-of-plea hearing on July 7, 2021 at the request of the district court, but Halls had already knowingly and voluntarily signed the plea agreement on June 15, 2021. Moreover, the district court emphasized at the hearing that "sometimes the Court can sentence you above the guidelines or below the guidelines, or even outside of the guidelines, depending upon the facts, the circumstances, and the law that's presented to the Court at or about the time of sentencing." App'x at 59.

Similarly, the plea agreement itself did not promise "that the upward or downward adjustments discussed in the agreement were exclusive." *United States v. McDermott*, No. 24-511, 2024 WL 5114132, at *2 (2d Cir. Dec. 16, 2024) (summary order); *see also United States v. Lenoci*, 377 F.3d 246, 258 (2d Cir. 2004) (noting that a defendant could not "cite any provision in the plea agreement" precluding the government from arguing for a particular upward adjustment, "for there is no such provision"). And the government's mere agreement "to certain sentencing data points" does not bind "the government to argue for a sentence based only on the agreed upon data points." *McDermott*, 2024 WL 5114132, at *2; *see United States v. Hotaling*, Nos. 24-434, 24-436, 2025 WL 2416346, at *2 (2d Cir. Aug. 21, 2025) (summary order) (similar). In fact, the plea agreement here explicitly stated: "Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and

6

is not binding on the parties to this agreement, the Probation Office, or the Court." App'x at 32. It also stated that, absent a stipulation "explicitly limit[ing] the government's discretion with respect to its recommendations at sentencing," the government retained the right to "urg[e] the sentencing Court to find that a particular offense level . . . or guidelines range applies." *Id.* at 34.[3]

Halls thus could not have reasonably relied on the government's estimated Guidelines range at the change-of-plea hearing.

## III. The District Court Erred in Imposing Discretionary Conditions of Supervised Release It Did Not Orally Pronounce at Sentencing

"It is a question of law whether the spoken and written terms of a defendant's sentence differ impermissibly." *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018).[4] Halls argues that the district court erred in including two non-mandatory conditions of supervised

---

[3] Halls's argument that the plea agreement's limitations were ineffective because they were followed by "two paragraphs describing *only* one way in which the government's plea estimate could change" fails. Appellant's Br. at 21. The paragraphs at issue read:

> Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

> Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

App'x at 32-33. But Halls's interpretation of the agreement is incorrect. The plea agreement does not state at any point that this is the only way in which Halls's Guidelines range could change.

[4] The parties disagree over the proper standard of review for the district court's imposition of conditions of supervised release on Halls. We do not reach this issue because the imposition of discretionary conditions not orally pronounced at sentencing was error under any standard of review, as discussed below.

release, the Financial Records Condition and the Search Condition, in the written judgment that it did not pronounce in Halls's presence at sentencing.

In *Maiorana*, we recently held that "a sentencing court intending to impose non-mandatory conditions of supervised release . . . must notify the defendant during the sentencing proceeding; if the conditions are not pronounced, they may not later be added to the written judgment." 2025 WL 2471027, at *6. "A sentencing court need not read the full text of every condition on the record. But it must, at the very least, as part of the pronouncement of the sentence in the presence of the defendant during the sentencing proceeding, expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the [pre-sentence report ("PSR")], the Guidelines, or a notice adopted by the court." *Id.*

Here, the district court at sentencing did not recite or "expressly adopt or specifically incorporate by reference" the "particular" discretionary conditions at issue. *Id.* The court stated only that Halls "shall comply with the standard conditions that have been adopted by this Court." App'x at 108. At the time of Halls's sentencing, the Northern District of New York's General Order #23 included the Financial Records and Search Conditions as part of the "standard conditions" of supervised release. *Id.* at 14-15. But at sentencing the court did not "expressly adopt or specifically incorporate by reference" those two "particular conditions" as set forth in General Order #23, nor did the court reference General Order #23. *Maiorana*, 2025 WL 2471027, at *6. The parties waived the court's reading of the special conditions attached to the PSR, App'x at 109, but the PSR did not mention the Financial Records and Search Conditions

8

either.  Under *Maiorana*, therefore, the discretionary conditions Halls challenges "were not lawfully imposed upon him."  2025 WL 2471027, at *6.

\* \* \*

For the foregoing reasons, the portion of the district court's judgment regarding Halls's guilty plea is **AFFIRMED**, and the matter is **REMANDED** to the district court with instructions to **VACATE** the portion of the judgment imposing the Financial Records and Search Conditions. "[I]f the District Court intends to impose" these two conditions "in the revised judgment, it must convene a hearing in the presence of the defendant and must advise the defendant that those conditions will be imposed, either through a full recitation or through the express adoption of particular conditions that have been set forth in writing and made available to [Halls] in the PSR, the Guidelines, or a notice adopted by the court."  *Maiorana*, 2025 WL 2471027, at *6.[5]  "If, on

---

[5] "[Halls] has a right to a hearing, but he may elect to waive it.  The District Court may provide [Halls] with written notice of the conditions it intends to impose on remand.  [Halls] may elect *not* to demand a hearing regarding those conditions and insist on their pronouncement in his presence.  He may instead elect to argue his position in writing only, or to simply agree with the imposition of the conditions proposed."  *Maiorana*, 2025 WL 2471027, at *6 n.14.

We also note that after Halls's sentencing the Northern District of New York amended General Order #23 to strike the Financial Records and Search Conditions.  App'x at 120-22.  If the district court intends to reimpose those two conditions on Halls, it thus could not do so by referencing General Order #23.  Rather, the court would have to do a "full recitation" of the conditions or, if a separate "notice adopted by the court" sets forth those conditions, "expressly adopt or specifically incorporate by reference" those conditions as stated in that separate notice.  *Maiorana*, 2025 WL 2471027, at *6.  Of course, if the district court elects to reimpose these two special conditions on remand, it "must conduct an individualized assessment as to whether [each] special condition is reasonably related to the applicable § 3553(a) sentencing factors and must state on the record the reason for imposing it."  *United States v. Sims*, 92 F.4th 115, 126 (2d Cir. 2024).

9

the other hand, the court does not choose to reimpose the [Financial Records and Search Conditions], it may simply strike them from the judgment . . . without the need to conduct a new sentencing proceeding." *Id.*

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe, Clerk of Court

10